**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SHREE VEER CORPORATION and CHIEF HOSPITALITY, LLC, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,** <br> **Plaintiffs,** | § | **CIVIL ACTION NO. 3:20-cv-03268-L** |
| **v.** | § | |
| **OYO HOTELS, INC.,** <br> **Defendant.** | § | |

---

**DEFENDANT'S BRIEF IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

---

Respectfully submitted,


_/s/ Meagan Martin Powers_______
Meagan Martin Powers
State Bar No. 24050997
Katherine M. Anand
State Bar No. 24050223
M. Angelita Delgadillo
State Bar No. 24072507
**MARTIN POWERS & COUNSEL, PLLC**
600 E. John Carpenter Freeway, Suite 234
Irving, Texas 75062
Telephone: (214) 612-6474
Facsimile: (214) 247-1155
meagan@martinpowers.com
katie@martinpowers.com
angelita@martinpowers.com

**ATTORNEYS FOR DEFENDANT
OYO HOTELS, INC.**

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** .......... 1

**BACKGROUND** .......... 2

**A. The Parties' Marketing, Consulting and Revenue Management Agreements** .......... 2

**B. COVID-19 Wreaks Unfathomable Havoc on the Hospitality Industry** .......... 5

**PROCEDURAL HISTORY** .......... 6

**APPLICABLE LEGAL STANDARD** .......... 7

**ARGUMENT AND AUTHORITIES** .......... 9

**A. Plaintiffs Fail to Properly Plead Fraud/Fraudulent Inducement on Behalf of Themselves Individually or the Putative Class** .......... 9

1. Plaintiffs Fail to Plead Any Actionable False Material Misrepresentations .......... 10
2. Plaintiffs Fail to Adequately Plead Scienter .......... 15
3. Plaintiffs Fail to Adequately Plead Reliance and Resulting Damages .......... 16

**B. Plaintiffs Fail to Plead Any Facts In Support of their Fraud by Nondisclosure Claims on Behalf of Themselves Individually or the Putative Class** .......... 17

**C. Plaintiffs' Tort Claims (Fraud, Fraudulent Inducement and Fraud by Nondisclosure) Are Barred by the Economic Loss Doctrine and Should Be Dismissed** .......... 19

**CONCLUSION** .......... 21

## TABLE OF AUTHORITIES

CASES

*Am. Realty Tr., Inc. v. Hamilton Lane Advisors, Inc.*,
115 F. App'x 662 (5th Cir. 2004) ........ 15
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 8
*Baker v. Putnal*,
75 F.3d 190 (5th Cir.1996) ........ 8
*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 7, 8
*Blankinship v. Brown*,
399 S.W.3d 303 (Tex. App.—Dallas 2013, pet. denied) ........ 18
*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir.2000) ........ 9
*Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*,
51 S.W.3d 573 (Tex. 2001) ........ 9
*Express One Int'l v. Steinbeck*,
53 S.W.3d 895 (Tex. App. —Dallas 2001) ........ 19
*Exxon Corp. v. Emerald Oil & Gas Co.*,
348 S.W.3d 194 (Tex. 2011) ........ 15
*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
565 F.3d 200 (5th Cir. 2009) ........ 9
*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*,
960 S.W.2d 41 (Tex. 1998) ........ 20, 21
*Guidry v. American Pub. Life Ins. Co.*,
512 F.3d 177 (5th Cir. 2007) ........ 7
*Haase v. Glazner*,
62 S.W.3d 795 (Tex. 2001) ........ 10
*Herrmann Holdings Ltd. v. Lucent Techs. Inc.*,
302 F.3d 552 (5th Cir. 2002) ........ 15, 19
*Hou–Tex, Inc. v. Landmark Graphics*,
26 S.W.3d 103 (Tex. App.—Houston [14th Dist.] 2000) ........ 19
*Ibe v. Jones*,
836 F.3d 516 (5th Cir. 2016) ........ 14
*Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc.*,
387 F. Supp. 2d 691 (S.D. Tex. 2004) ........ 9
*Jeffcoat v. Phillips*,
534 S.W.2d 168 (Tex. App.—Houston [14th Dist.] 1976) ........ 11
*Jim Walter Homes, Inc. v. Reed*,
711 S.W.2d 617 (Tex.1986) ........ 19
*Landers v. Aurora Loan Servs.*,
434 S.W.3d 291 (Tex. App.—Texarkana 2014, no pet.) ........ 15
*Physicians ACO, LLC v. Computer Scis. Corp., et al*,
No. 4:16-CV-1293, 2018 WL 1172653 (S.D. Tex. Mar. 5, 2018) ........ 16

*Polyflow, L.L.C. v. Specialty RTP, L.L.C.*,
993 F.3d 295 (5th Cir. 2021) .................... 9
*Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*,
784 F.2d 674 (5th Cir. 1986) .................... 11
*Prof'l Supplements, LLC v. All Am. Pharm. & Nat. Foods, Corp.*,
No. 3:12-CV-00308-P, 2012 WL 12893391 (N.D. Tex. Oct. 26, 2012) .................... 8
*Prudential Ins. Co. v. Jefferson Assocs., Ltd.*,
896 S.W.2d 156 (Tex. 1995) .................... 11
*R2 Invs. LDC v. Phillips*,
401 F.3d 638 (5th Cir. 2005) .................... 8, 13
*Reliable Consultants, Inc. v. Earle*,
517 F.3d 738 (5th Cir. 2008) .................... 7
*Ryan v. Collins*,
496 S.W.2d 205 (Tex. Civ. App.–Tyler 1973, writ ref'd n.r.e.) .................... 12, 14
*SB Premium, LLC v. Wolfpack Wholesale, Inc.*,
No. 3:17-CV-931-L, 2018 WL 4362726, (N.D. Tex. Sept. 13, 2018) .................... 18
*Sharyland Water Supply Corp. v. City of Alton*,
354 S.W.3d 407 (Tex. 2011) .................... 21
*Spivey v. Robertson*,
197 F.3d 772 (5th Cir.1999), cert. denied, 530 U.S. 1229 (2000)) .................... 9
*Stanley Indus. of S. Fla. v. J.C. Penney Co.*,
No. 3:05-cv-2499-L, 2006 WL 2432309, (N.D. Tex. Aug. 18, 2006) .................... 20, 21
*Stroud v. Meister*,
No. Civ.A.3:97–CV–0860–L, 2001 WL 282764 (N.D. Tex. March 16, 2001) .................... 11, 12, 13
*Sw. Bell Tel. Co. v. DeLanney*,
809 S.W.2d 493 (Tex. 1991) .................... 20
*Town N. Bank, N.A. v. Shay Fin. Servs., Inc.*,
No. 3:11-CV-3125-L, 2013 WL 1294093 (N.D. Tex. Mar. 30, 2013) .................... 8, 9
*Tuchman v. DSC Commc'ns Corp.*,
14 F.3d 1061 (5th Cir. 1994) .................... 15, 16
*United States ex rel. Riley v. St. Luke's Episcopal Hosp.*,
355 F.3d 370 (5th Cir. 2004) .................... 8
*United States ex rel. Williams v. Bell Helicopter Textron, Inc.*,
417 F.3d 450 (5th Cir. 2005) .................... 19
*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
987 F.2d 429 (7th Cir.1993) .................... 9

## STATUTES

16 CFR § 436.1 .................... 2
28 U.S.C. § 1332 .................... 6

## RULES

Fed. R. Civ. P. 12(b)(6) .................... 1, 2, 6, 9, 13, 14, 19, 22
Fed. R. Civ. P. 9(b) .................... 6

Defendant OYO Hotels, Inc. ("OYO" or "Defendant") hereby files its Brief in Support of its Partial Motion to Dismiss Plaintiffs' Second Amended Complaint Pursuant to Rule 12(b)(6) (the "Motion") and respectfully states:

## PRELIMINARY STATEMENT

This case is a contract dispute between Plaintiff hotel owners Shree Veer Corporation ("Shree Veer") and its sister company, Chief Hospitality, LLC ("Chief Hospitality") and Defendant OYO Hotels, Inc. ("OYO"). OYO provides management and consulting services for hotel owners, such as Plaintiffs, under unified OYO name branding. Plaintiffs contend that OYO engaged in fraud, fraudulent inducement, and fraud by nondisclosure when its CEO (Ritesh Agarwal) made a series of pre-contracting statements regarding the OYO platform and business model that Plaintiffs contend induced them (and a "Putative Class" of hotel owners) to enter into contracts with OYO to their ultimate detriment. Plaintiffs also contend that OYO breached the parties' agreements and thereby also committed fraud and fraudulent inducement when OYO exercised its contractual right to declare rooms unavailable or blocked for online booking due to the COVID-19 pandemic. Plaintiffs (again) assert the COVID-19-based claims on behalf of themselves and a "Putative Class" of hotel owners.

On September 30, 2021, this Court entered an order dismissing Plaintiffs' fraud, fraudulent inducement, and fraud by nondisclosure claims in their entirety under Federal Rule of Civil Procedure 12(b). *See* Memorandum Opinion and Order [ECF 20] at 8-11. Therein, this Court found that Plaintiffs' First Amended Complaint (the "FAC") complied with Rule 9(b)'s requirement to set forth the whom, what, when, where, and how of the allegedly fraudulent statements, but that Plaintiffs failed to meet Rule 12(b)(6)'s pleading standard to set forth sufficient allegations supporting each element of the asserted fraud-based causes of action. *Id*.

On October 6, 2021, Plaintiffs filed their Second Amended Complaint (the "SAC") wherein they (again) have largely failed to meet Rule 12(b)(6)'s pleading requirement with respect to their various fraud claims.

The new SAC mirrors—verbatim in all material respects—the prior FAC with the exception of two new paragraphs (¶¶ 14-15 and duplicated in the class claims at ¶¶ 65-66) and an attached January 2021 Wall Street Journal Article. *See* SAC ¶¶ 14-15, 65-66; SAC Exhibit 5. Therein, Plaintiffs appear to allege that Agarwal knew that he was making false statements to Plaintiffs and the Putative Class in June/July 2019 because six months later (in December 2019) OYO cancelled certain minimum guaranty contracts in China and Japan which resulted in lawsuits and protests. *Id*. Even if assertions predicated on a CEO being gifted with precognition or clairvoyant capabilities were—in a light most favorable to Plaintiffs—to rise above mere speculation, neither the additional paragraphs nor the restated allegations of the FAC that are repeated verbatim in the SAC set forth allegations sufficient to support each element of Plaintiffs' fraud-based claims. As such (and as detailed below), Plaintiffs' fraud-based claims should be dismissed under Rule 12(b)(6) with prejudice to their refiling.

## BACKGROUND

### A. The Parties' Marketing, Consulting and Revenue Management Agreements

1. OYO is one the largest and fastest-growing hospitality brands in the world. *See generally* Plaintiffs' Second Amended Complaint (the "SAC") [ECF No. 21] ¶ 6.

2. In 2019, OYO entered the United States market through contract arrangements with independently owned hotels.[1] *Id*. ¶ 7.

[1] The SAC repeatedly refers to Plaintiffs and the Putative Class as "franchisees" and the applicable contracts as "franchise agreements." The word "franchise" is a term of art. *See* 16 CFR § 436.1. Despite Plaintiffs' casual use of the term, neither Plaintiffs nor the Putative Class are franchisees under applicable federal law nor are the agreements at issue franchise agreements. By referring to paragraphs in the SAC using those

3. On or about August 12, 2019, Plaintiff Chief Hospitality and OYO entered into the certain Marketing, Consulting and Revenue Management Agreement (the "Chief Hospitality Agreement") in which OYO would provide the "Facility Owner" (here, Chief Hospitality) with an up-front capital contribution to make required property improvements and then provide revenue management, marketing and online booking services for Chief Hospitality's hotel located in McCook, Nebraska. *See generally* SAC Ex. 1 (copy of the Chief Hospitality Agreement).

4. On or about, August 29, 2019, Plaintiff Shree Veer and OYO entered into the certain Marketing, Consulting and Revenue Management Agreement (the "Shree Veer Agreement") in which (again) OYO would provide the "Facility Owner" (here, Shree Veer) with an up-front capital contribution to make required property improvements and then provide revenue management, marketing and online booking services for Shree Veer's hotel located in Alva, Oklahoma. *See generally* SAC Ex. 2 (copy of the Shree Veer Agreement); SAC ¶ 17 (quoting a portion of the Shree Veer Agreement that was later amended by the Parties in the First Amendment to the Shree Veer Agreement (*Compare* SAC Ex. 2 § 3 *with* SAC Ex. 2 pp. 6-7)); SAC ¶ 68 (Shree Veer signed an agreement with OYO).

5. The Chief Hospitality Agreement and the Shree Veer Agreement (together, the "Agreements") each contain a "Revenue Guarantee" provision.[2] *See* SAC ¶ 17; Chief Agmt. § 3; Shree Veer Agmt. § 3. The Revenue Guarantee provision in each Agreement generally provides that after meeting certain required prerequisite conditions where monthly gross revenue for the facility fails to meet an individually set target, OYO will pay the Facility Owner a payment

terms, OYO is not admitting or otherwise agreeing to Plaintiffs' characterization of the property owners as franchisees or the contracts at issue as franchise agreements.

[2] OYO disputes and disagrees with Plaintiffs' characterization and description of the Revenue Guarantee. These contract provisions speak for themselves.

calculated as set forth in Section 3 or a subsequently negotiated addendum. *See* Chief Agmt. § 3; Shree Veer Agmt. § 3.

6. While each of the Revenue Guarantees are different, they are each clear that the Revenue Guarantee is not absolute. For example, payment of the Revenue Guarantee is subject to clawback (as a deduction from future payments otherwise due to the Facility Owner) where revenue in a subsequent month rises above the minimum amount. *See* Chief Agmt. § 3; Shree Veer Agmt. § 3. The Revenue Guarantee is also conditioned on the Facility Owner completing the required capital improvement work listed on Exhibit A of each Agreement. *See* Chief Agmt. § 3; Shree Veer Agmt. § 3. Further, the Agreements provide that the Revenue Guarantee is adjusted monthly based on room availability:

> The Revenue Guarantee Amount will be pro-rated based upon the actual number of available rooms every month. If any number of rooms at the Building are blocked during the month (either by Owner or OYO) for any reason including planned or unplanned repair or maintenance, the applicable Revenue Guarantee Amount will be adjusted in a pro-rata manner to correspond with the number of online rooms. For example, if 50% of the rooms are offline for maintenance in April, the applicable Revenue Guarantee Amount will be 50% of the number stated above for the month of April.

*Id*. On this point, the two Agreements are identical—***either party may designate rooms as blocked or unavailable for any reason***. *Compare* Chief Agmt. § 3 *with* Shree Veer Agmt. § 3. Where rooms are designated as blocked or unavailable, the Agreements provide that such rooms are not included in the calculation of the Revenue Guarantee. *Id*. Thus, where—for example—either the Facility Owner or OYO were to block 100% of the rooms for a particular month—an express contractual right reserved for each party—no Revenue Guarantee would be payable. Plaintiffs ignore this portion of the Agreements' Revenue Guarantee provision in their SAC by pasting in only a portion of Section 3. SAC ¶¶ 16-17.

7. The Agreements also provide termination rights for both OYO and the Facility Owner: "[e]ither Party may terminate this Agreement without assigning any cause by giving the other Party a prior written notice of 30 days." Chief Agmt. § 9; Shree Veer Agmt. § 9. In other words, while the Agreements were for six-year terms, they were terminable-at-will by either party upon thirty (30) days' notice. *Compare* Chief Agmt. § 1 & Shree Veer Agmt. § 1 (six-year initial term) *with* Chief Agmt. § 9; Shree Veer Agmt. § 9 (thirty-day termination without cause rights).

8. Recognizing that it was entering a new market, OYO's agreements also included substantial modification rights in OYO's favor. Here, each of the Agreements state that "OYO reserves the right to propose a change in the terms of this Agreement any time during the Term by giving a prior written notice of 15 days to the Facility Owner." Chief Agmt. § 10; Shree Veer Agmt. § 10.

9. Curiously, despite Section 10's modification rights, Section 9's thirty-day no cause termination rights, and the conditions set forth in Section 3 governing the Revenue Guarantee, Plaintiffs claim that the existence of the Revenue Guarantee "induced" Plaintiffs and the Putative Class into signing the Agreements. *See* SAC ¶¶ 18, 102.

**B. COVID-19 Wreaks Unfathomable Havoc on the Hospitality Industry**

10. In March 2020, the World Health Organization declared COVID-19 a global pandemic. SAC ¶ 23. Thereafter, responding to the numerous "Shelter in Place" orders and directives and other COVID-19 developments, OYO sent a letter to Plaintiffs which Plaintiffs (again) falsely claim is excerpted in the SAC.[3] *Compare* SAC ¶ 24 with SAC Exhibit 3 (different

[3] Plaintiffs aver that the excerpts contained in SAC ¶ 24 were made in an April 2, 2020 correspondence that is attached as Exhibit 3 to the SAC. SAC ¶ 24. However, the letter quoted in ¶ 24 is not the letter that appears at Exhibit 3. In their SAC, just like in their FAC [ECF 10] ("FAC"), Plaintiffs mistakenly and repeatedly refer to this letter as the "April 2, 2020" letter, when the letter is in fact dated March 27, 2020. *Compare* FAC ¶ 23 and ¶ 45 *with* SAC ¶ 24 and ¶ 46; *and see* Memorandum Opinion and Order on Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint [ECF 20] at footnote 2. The letter

letters). As set forth in Exhibit 3 (*i.e.,* the actual March 27, 2020 letter), OYO advised Plaintiffs that OYO had determined that the various orders, directives, and other COVID-19 developments rendered the rooms unavailable under Section 3 of the Agreements and thus OYO was suspending payment of the Revenue Guarantee. *Id.* Recognizing the effect COVID-19 was having on the Facility Owners, OYO also fully suspended both its base commission and upside commissions on any revenues that hotels were able to generate should they be able to operate—at all—under local orders applicable to their facility.[4] *Id.*

11. On October 27, 2020, Plaintiffs—apparently dissatisfied with OYO's exercise of its express rights under the parties' Agreements and its commission accommodations to assist Facility Owners—filed their Petition in County Court at Law No. 3, Dallas County. *See generally* Plaintiffs' Original Petition and Class Action. (herein, the "Original Petition" or "Pet.") [ECF No. 1-4] ¶ 6. Therein, Plaintiffs alleged claims for breach of contract, fraud by non-disclosure, and fraud/fraudulent inducement on behalf of themselves and a Putative Class. *See id.* ¶¶ 24-34 (Plaintiffs' claims) & ¶¶ 70-85 (Putative Class Claims).

## PROCEDURAL HISTORY

12. On October 28, 2020, prior to being served with process, Defendant removed this case to federal court pursuant to 28 U.S.C. § 1332(a)(1) and alternatively under § 1332(d)(2). *See generally* Notice of Removal [ECF No. 1].

13. On November 17, 2020, Defendant filed a Motion to Dismiss the Original Petition Pursuant to Rules 12(b)(6) and 9(b). *See generally* Mot. to Dismiss Original Pet. [ECF No. 4].

---

quoted at SAC ¶ 24 was not sent to either Plaintiff.

[4] For example, some OYO Facility Owners were able to provide temporary housing for first responders under various local shelter-in-place orders.

14. On November 27, 2020, Plaintiffs filed a Motion to Remand this action back to the County Court at Law No. 3 for Dallas County. *See generally* Mot. to Remand [ECF No. 8].

15. In response to the Motion to Dismiss, on December 8, 2020, Plaintiffs filed their First Amended Complaint. *See generally* FAC [ECF 10].

16. On December 22, 2020, Defendant filed its Motion to Dismiss Plaintiffs' First Amended Complaint and Brief in Support. *See generally* Mtn. to Dismiss FAC [ECF 14] and Brief in Support [ECF 15]. In its reply brief, Defendant withdrew its request that the Court dismiss Plaintiffs' breach of contract claim at the Rule 12(b)(6) stage and limited its request to Plaintiffs' various fraud claims. *See* Defendant's Reply in Support of Its Motion to Dismiss FAC [ECF 18].

17. On June 21, 2021, the Court entered an order denying Plaintiffs' Motion to Remand to State Court. *See generally* Memorandum Opinion and Order [ECF 19].

18. On September 20, 2021, the Court entered an order granting Defendant's Motion to Dismiss as to Plaintiffs' claims of fraud by non-disclosure and common law fraud, and giving Plaintiffs leave to amend their pleadings with respect to their fraud claims. *See generally* Memorandum Opinion and Order [ECF 20].

19. On October 6, 2021, Plaintiffs filed their Second Amended Complaint. *See generally* SAC [ECF 21].

## APPLICABLE LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* When the allegations do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *See Iqbal*, 556 U.S. at 679.

While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679; *see Prof'l Supplements, LLC v. All Am. Pharm. & Nat. Foods, Corp.*, No. 3:12-CV-00308-P, 2012 WL 12893391, at *2 (N.D. Tex. Oct. 26, 2012) ("The factual matter contained in the complaint must allege actual facts, not legal conclusions dressed up as facts.") (citing *Iqbal*, 556 U.S. at 679). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *See R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005). The court does not evaluate plaintiff's likelihood of success; instead, it only determines whether the complaint states a cognizable claim. *See United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

In ruling on a motion to dismiss, "the court cannot look beyond the pleadings." *Town N. Bank, N.A. v. Shay Fin. Servs., Inc.*, No. 3:11-CV-3125-L, 2013 WL 1294093, at *1–2 (N.D. Tex. Mar. 30, 2013) (citing *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996); *Spivey v. Robertson*, 197

F.3d 772, 774 (5th Cir.1999), cert. denied, 530 U.S. 1229 (2000)). However, pleadings include the complaint, any documents attached to the complaint, and any "'[d]ocuments that a defendant attaches to a motion to dismiss. . . if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Town N. Bank, N.A.*, 2013 WL 1294093, at *1–2 (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir.2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp*., 987 F.2d 429, 431 (7th Cir.1993)).

## <u>ARGUMENT AND AUTHORITIES</u>

### A. Plaintiffs Fail to Properly Plead Fraud/Fraudulent Inducement on Behalf of Themselves Individually or the Putative Class

The Court should dismiss Plaintiffs' claims for fraud/fraudulent inducement (*see* SAC ¶¶ 43-46 (Plaintiffs' individual cause of action) & ¶¶ 98-104 (on behalf of the Putative Class)) because Plaintiffs failed to plead factual allegations from which Defendant and the Court could reasonably infer each element of their common law fraud/fraudulent inducement claim as required by Rule 12(b)(6).

In Texas, the elements of common-law fraud include: (1) a material misrepresentation, (2) which was false, and (3) which was either known to be false when made or was asserted without knowledge of the truth, (4) which was intended to be acted upon, (5) which was relied upon, and (6) which caused injury. *See* Memorandum Opinion and Order [ECF 20] at 8 (citing *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp*., 565 F.3d 200, 212 (5th Cir. 2009) (citing *Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc*., 387 F. Supp. 2d 691, 709 (S.D. Tex. 2004)); *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co*., 51 S.W.3d 573, 577 (Tex. 2001)). Further, as noted by the Court, Plaintiffs' fraudulent inducement claim is "a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." *Id*. (quoting *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 304 (5th Cir. 2021); *Haase*

*v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001))

1. **<u>Plaintiffs Fail to Plead Any Actionable False Material Misrepresentations</u>**

Plaintiffs' SAC alleges six statements that they contend constitute false material misrepresentations. The first five statements were allegedly made by OYO's CEO (Ritesh Agarwal) at a prospective property owner meeting in June/July 2019. SAC ¶¶ 11-13. Specifically, Plaintiffs contend that Mr. Agarwal made the following statements:

(a) "[OYO's] sophisticated revenue management and guest stay booking software platforms would increase the property owners' business;"

(b) "[OYO's] guest stay booking algorithms and revenue modeling tools were state-of-the-art and drew on data and sophisticated modeling from hotel operations around the world and were developed using the best artificial intelligence and/or machine learning talent and resources available anywhere;"

(c) "[OYO's] software was incomparable and bolstered by [OYO's] employment of over two thousand software engineers around the world that continually optimize the revenue management and booking software;"

(d) "[OYO's] revenue management and booking software mechanisms were so accurate that [OYO] could predict, down to the dollar, major revenue growth for each hotel that entered into an agreement with [OYO] (which would allow [OYO] to offer the guaranteed revenue agreement. . . ;"

(e) "The opportunity to work with [OYO] (by converting their properties to OYO-branded hotels) was infallible because even if Defendant's revenue management and booking software did not operate as promised and could not yield the guaranteed revenue, Plaintiffs and all other prospective franchisees cold rely on the contractual guaranteed minimum revenue as [a] backstop mechanism."

SAC ¶¶ 13, 38, 46, 64, 93, & 103. These statements are collectively referred to herein as the "<u>Agarwal Statements</u>."

In addition to the Agarwal Statements, Plaintiffs point to a sixth alleged misrepresentation made by OYO that "Plaintiffs' available rooms [were] 'unavailable' because of the COVID-19

pandemic." SAC ¶¶ 46(b) & 103(b).[5] Plaintiffs also describe this misrepresentation as "arbitrarily, unilaterally and fraudulently withholding Guaranteed Revenue payments based on room 'unavailability.'" *Id*. ¶ 101(b).

Because neither the Agarwal Statements nor OYO's communication that it deemed rooms unavailable under the parties' Agreements constitute false material misrepresentations, Plaintiffs have failed to meet their burden of pleading a cognizable claim for fraud or fraudulent inducement.

First, each of the Agarwal Statements are clearly opinion or judgment statements—not statements of fact.[6] Texas law is clear that to be a misrepresentation, a statement must concern ***facts*** as opposed to mere opinion, judgment, or expectation. *Jeffcoat v. Phillips*, 534 S.W.2d 168, 171 (Tex. App.—Houston [14th.Dist.] 1976); *Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 680 (5th Cir. 1986) (applying Texas law to hold that a prediction of film's box office success was an opinion only and not actionable as a fraudulent misrepresentation); *Prudential Ins. Co. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 163 (Tex. 1995) (finding that statements that a building was "superb," "super fine," and "one of the finest little properties in the City of Austin" were not misrepresentations of material fact, but instead expressions of opinion that could not constitute fraud). In *Stroud v. Meister*, No. Civ.A.3:97–CV–0860–L, 2001 WL 282764, at *8 (N.D. Tex. March 16, 2001), this Court explained:

It is questionable whether the statements that Meister was "solid" and that the

[5] Plaintiffs aver that this statement was made in April 2, 2020 correspondence. SAC ¶¶ 46(b) & 103(b). However, as there is no April 2nd letter, it appears that Plaintiffs intended to refer to the March 27, 2020 letter from OYO to Plaintiffs' principal (Chandrakandt D. Shah) attached as Exhibit 3 to the SAC.

[6] To be clear, the Agarwal Statements do include factual averments supporting the opinions/judgments allegedly expressed by Mr. Agarwal (*e.g.*, the booking algorithms were modeled from hotel operations around the world using AI and machine learning, that OYO employs over 2,000 software engineers, that OYO continually optimizes its software, that the software has predictive capabilities) but Plaintiffs' SAC doesn't address those facts, state that those facts were material or relevant to any action taken by Plaintiffs, or state that those facts were not true or were somehow incomplete or deceptive. *See* SAC ¶¶ 13, 38, 46, 64, 93, & 103.

> joint ventures were good investments would support a fraud claim even if Feltus knew the statements were false when he made them. A fraud cause of action requires a misrepresentation which "must concern a material fact as distinguished from a mere matter of opinion, judgment, probability or expectation." Representations as to the value of a prospective investment, such as that it "was 'hot'; that it had 'unlimited possibilities;' and was a 'solid buy,'" constitute "an opinion, judgment, probability or expectation" rather than a material fact, and are not actionable fraud. "This rule is particularly applicable where there is nothing to indicate the statement was other than the expression of an honest opinion."

*Id*. at *8 (quoting *Ryan v. Collins*, 496 S.W.2d 205, 210 (Tex. Civ. App.–Tyler 1973, writ ref'd n.r.e.)); *see also Ryan*, 496 S.W.2d at 210 ("Where no confidential relationship exists between the parties, a mere expression of an opinion as to the value that proves to be incorrect or false generally is not considered to be a misrepresentation of a material fact upon which one may rely."). As such, Agarwal's alleged statements that OYO's platform would increase Plaintiffs' business, that OYO's software was "state-of-the-art," "incomparable" and "so accurate," as well as his alleged statement that the business opportunity was "infallible" are solely opinions and expectations of an eager CEO, and thus not actionable misrepresentations that could serve as a basis for Plaintiffs' fraud claims.

<u>Second</u>, despite the SAC's addition of ¶¶ 14-15 (and ¶¶ 65-66 as to the Putative Class Claims), Plaintiffs do not allege any facts to show that Agarwal knew the Agarwal Statements were false when allegedly made in June/July 2019. Instead, ¶¶ 14 and 65 summarize a January 2021 Wall Street Journal Article (SAC Exhibit 5) chronicling OYO's growing pains across international markets. The WSJ Article's reporting is even based—in part—on this very lawsuit. *Id*. With respect to China and Japan, the article notes that "OYO rolled out these [referring to minimum guarantee] contracts in 2019" in China and that beginning in late 2019 OYO began cancelling some of those contracts. *Id*. The article goes on to state that OYO's actions resulted in protests and litigation. *Id*. From this reporting, Plaintiffs state that Agarwal knew or should have known that

working with OYO was not infallible because OYO was "utterly failing in recent deployments in Japanese, Chinese, European markets, and even in OYO's home market in India; all these issues were ongoing as Mr. Agarwal made his fraudulent statements [to Plaintiffs]." *See* SAC ¶ 14 & 65. However, it strains credibility to assert that Agarwal had knowledge in June/July 2019 when he made the Agarwal Statements to Plaintiffs that he knew that 5-6 months later that OYO would pull back on minimum guarantee contracts in China and Japan and that such action would result in litigation. Reliance on precognition as a basis for asserting that Agarwal knew the Agarwal Statements were false when made is both an unwarranted deduction and mere speculation and does not meet the pleading standard of Rule 12(b)(6). *See R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005).

*Third*, with respect to Agarwal Statement (e) (regarding the "infallible" nature of the Revenue Guarantee), Plaintiffs make no allegations that his alleged statement was contrary to or otherwise inconsistent with the plain terms of the Agreements that Plaintiffs (and the Putative Class) subsequently received, reviewed, and signed. *See generally* SAC. As set forth above (*see* supra ¶¶ 6-8), the Agreements were clear that the Revenue Guarantee was not absolute. It was dependent on multiple factors including property owners completing the necessary transformation of their hotel to bring it up to industry standards, room availability, and the unilateral capacity of both parties to designate rooms as unavailable (and thus not subject to the revenue guarantee) for any reason. Moreover, OYO had expressly reserved the contractual right to modify terms—such as the Revenue Guarantee—with thirty days' notice. In light of the express terms of the Agreements, Agarwal's alleged statement regarding the "infallibility" of the proposed business arrangement cannot be seen as anything more than mere opinion and not of fact and thus cannot serve as the basis for a fraud claim. *See, e.g., Stroud,* 2001 WL 282764,

at *8; *Ryan*, 496 S.W.2d at 210.

*Finally*, the alleged sixth misrepresentation—*i.e.* that OYO's March 27, 2020 communication that it deemed rooms unavailable under the parties' Agreements and was thus suspending the revenue guarantee was false because Plaintiffs' hotels remained open and that the decision was otherwise "arbitrarily, unilaterally and fraudulently withholding Guaranteed Revenue payments based on room 'unavailability'" (SAC ¶ 101(b); *and see* ¶¶ 46(b), & 103(b))—cannot be a false material misrepresentation to support a fraud claim for several reasons. First, the statement itself is not a false material misrepresentation; rather it is a description of OYO's communication of the reason that OYO gave for suspending the Revenue Guarantee with some adverbs describing Plaintiffs' opinion of the suspension. Moreover, there is nothing false or even disputed about these statements: OYO did in fact declare Plaintiffs' hotel rooms to be unavailable due to the COVID-19 pandemic and thus declared the Revenue Guarantee to be suspended. *See* SAC ¶ 24 *and* SAC Exhibit 3. Plaintiffs simply disagree as to whether OYO was entitled to declare rooms unavailable on that basis. That is not a misrepresentation—it is a disagreement—and (at most) a potential breach of contract claim, which coincidentally Plaintiffs have asserted in the SAC. *Compare* SAC ¶¶ 30-33 & 83-87 *with id.* ¶¶ 43-46 & 98-104.

Nowhere else in the SAC do Plaintiffs allege any misstatements of fact by OYO beyond the Agarwal Statements and the OYO "unavailability of rooms" declaration. As such Plaintiffs have failed to allege any actionable false material misrepresentation sufficient to meet the requirements of Rule 12(b)(6). *See Ibe v. Jones*, 836 F.3d 516, 525 (5th Cir. 2016). Moreover, while the alleged misstatements are not actionable misstatements (as discussed above), even if they were, Plaintiffs fail—beyond mere speculation and conjecture relying on late 2019 events—to

"*explain why [any of] the statements were fraudulent*." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002) (emphasis added).

**2. *Plaintiffs Fail to Adequately Plead Scienter***

Plaintiffs also fail to sufficiently allege scienter—in fact such required allegations are wholly missing from the SAC beyond reciting the hornbook elements of the claims. *See generally* SAC ¶ 45 & 101 ("Defendant knew the statements were false when made. . . Defendant knew the representations were false or such representations were made recklessly without any knowledge as to the truth…"). Scienter–the requirement that the misrepresentation be knowingly false—is an essential element of Plaintiffs' fraud claims. *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011). Fraud is an intentional tort and it requires that the person making the representation be aware of its falsity at the time of the misrepresentation. *See Landers v. Aurora Loan Servs.*, 434 S.W.3d 291, 296 (Tex. App.—Texarkana 2014, no pet.).

Here, Plaintiffs have failed to plead scienter and, therefore, the Court should dismiss Plaintiffs' claim for common law fraud. To adequately plead scienter, a plaintiff must set forth specific facts that support an inference of fraud. *See Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). In turn, to support an inference of fraud, the plaintiff must allege facts showing the motive to commit fraud, or at least "indentify[] circumstances that indicate conscious behavior on the part of the defendant, although the strength of the circumstantial allegations must be correspondingly greater." *Id*. Fraud claims may not be based on conclusory allegations that a party made misrepresentations for financial gain or to win a contract. *See, e.g., Am. Realty Tr., Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 668 (5th Cir. 2004) ("Specifically, alleging that a defendant made false statements during 'negotiations leading up to' an event for the purpose of inducing someone to enter into a contract with him—without any additional factual support—

does not . . . set forth any 'specific facts' to support the inference of fraud"); *Tuchman*, 14 F.3d at 1068 ("[I]ncentive compensation can hardly be the basis on which an allegation of fraud is predicated"); *Physicians ACO, LLC v. Computer Scis. Corp., et al*, No. 4:16-CV-1293, 2018 WL 1172653, at *4 (S.D. Tex. Mar. 5, 2018) (Allegations that "[d]efendants [ ] made these representations with the intent to deceive CMS in order to procure the lucrative government contract …" were "inadequate to satisfy Rule 9(b) because the allegations are not supported by any specific facts"). Plaintiffs are clear that OYO wanted to grow its market share and do so quickly (*see* SAC ¶¶ 40, 95) but all companies are profit motivated. Plaintiffs have set forth no factual allegations suggesting a motive for fraud. Accordingly, Plaintiffs fail to adequately plead scienter for their fraud claims and they should be dismissed.

**3. *Plaintiffs Fail to Adequately Plead Reliance and Resulting Damages***

Finally, Plaintiffs fail to allege reliance or damages resulting from that reliance with respect to the alleged misrepresentation made by OYO in the March 27, 2020 letter[7] regarding rooms being rendered unavailable by the COVID-19 pandemic. *See generally* SAC ¶¶ 43-46 & 98-104. Plaintiffs' SAC makes clear that Plaintiffs did not rely upon OYO's declaration for two reasons. First, Plaintiffs allege that they remained open throughout the pandemic. *See* SAC ¶ 26. And second, Plaintiffs commenced this lawsuit challenging the propriety of OYO's declaration and resultant withholding of Revenue Guarantee payments—thus, Plaintiffs did not rely on OYO's communication to their detriment—instead they assert in this lawsuit that OYO breached its Agreements with Plaintiff by declaring rooms to be unavailable. Accordingly, Plaintiffs have not shown any detrimental reliance on the letter or damages stemming from that absent reliance; rather Plaintiffs have asserted breach of contract damages as they disagree with OYO's ability to

[7] Erroneously described as an April 2, 2020 letter in the SAC.

declare rooms unavailable under the parties' Agreements.

With respect to the Putative Class, Plaintiffs fail to allege any facts suggesting that the Putative Class relied on misrepresentations from OYO related to room "unavailability" or that the Putative Class relied on any such misrepresentations to their detriment, other than with a conclusory statement that, like Plaintiffs, members of the Putative class "did detrimentally rely" on an alleged misrepresentation regarding room "unavailability." *See* SAC ¶ 101. According to Plaintiffs' allegations, neither Plaintiffs nor the Putative Class actually detrimentally relied upon any declaration by OYO as to room "unavailability" because "Plaintiffs and all other OYO franchisees continued to operate and at no time were all rooms 'unavailable.'" *See* SAC ¶ 26; *and see id.* ¶ 59 ("Despite OYO's claims of room 'unavailability,' Plaintiff and other franchisees across the country continued to operate."). As such, Plaintiffs have failed to plead sufficient facts to state a claim for fraud/fraudulent inducement on behalf of the Putative Class that is plausible on its face.

Plaintiffs also fail to allege damages with respect to the Agarwal Statements. Plaintiffs state that the statements induced them into signing up with OYO but do not allege any damages outside of the unpaid minimum revenue guarantee, which are the subject of Plaintiffs' breach of contract claims.

**B. Plaintiffs Fail to Plead Any Facts In Support of their Fraud by Nondisclosure Claims on Behalf of Themselves Individually or the Putative Class**

The Court should dismiss Plaintiffs' claims for fraud by non-disclosure (*see* SAC ¶¶ 34-42 (Plaintiffs' individual cause of action) & ¶¶ 88-97 (on behalf of the Putative Class)) because Plaintiffs fail to plead enough facts to state a claim for relief that is plausible on its face as required by Rule 12(b)(6). As this Court previously stated, "[t]o state a claim for fraud by nondisclosure, the plaintiff must allege that:

> (1) the defendant failed to disclose facts to the plaintiff, (2) the defendant had a

> duty to disclose those facts, (3) the facts were material, (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts, (5) the defendant was deliberately silent when it had a duty to speak, (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, (7) the plaintiff relied on the defendant's nondisclosure, and (8) the plaintiff was injured as a result of acting without that knowledge.

*SB Premium, LLC v. Wolfpack Wholesale, Inc.*, No. 3:17-CV-931-L, 2018 WL 4362726, at *11 (N.D. Tex. Sept. 13, 2018) (citing *Blankinship v. Brown*, 399 S.W.3d 303, 308 (Tex. App.—Dallas 2013, pet. denied)).

Despite already having two opportunities to amend their claims, Plaintiffs have still failed to plead facts to support each element of a fraud by nondisclosure claim. Again, Plaintiffs recite conclusory hornbook law statements of the elements for fraud by nondisclosure. SAC ¶¶ 34-37 & 88-92. In their SAC, Plaintiffs allege five partial disclosures (the Agarwal Statements) that Plaintiffs contend form the basis for their claim (*see* SAC ¶¶ 38 & 93). However, the SAC still fails to allege (1) ***any facts*** that OYO ***failed to disclose*** (*i.e.*, expressly state what was not disclosed in conjunction with the Agarwal Statements that rendered the Agarwal Statements incomplete), (2) ***any facts*** showing that OYO had a duty to Plaintiffs or the Putative Class to make such additional disclosures, (3) ***any facts*** that the undisclosed facts were material, (4) ***any facts*** that OYO knew Plaintiffs or the Putative Class were ***ignorant of the undisclosed facts*** and did not have an equal opportunity to discover the undisclosed facts, (5) ***any facts*** suggesting that OYO was deliberately silent, (6) ***any facts*** suggesting that by failing to disclose the undisclosed facts that OYO intended to induce Plaintiffs or the Putative Class to take some action or refrain from acting, (7) ***any facts*** showing that Plaintiffs or the Putative Class relied on OYO's nondisclosure of the undisclosed facts, or (8) ***any facts*** that Plaintiffs or the Putative Class were injured as a result of acting (or refraining from acting) without knowledge of the undisclosed facts. *See* SAC ¶¶ 34-42

& 88-97.

Neither OYO nor this Court should be forced to speculate as to what non-disclosed information and other unstated facts form the factual basis of Plaintiffs and the Putative Class's fraud by non-disclosure claim and those claims should be dismissed. *See* Fed. R. Civ. P. 12(b)(6); *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005); *Herrmann Holdings Ltd.*, 302 F.3d at 564–65.

**C. Plaintiffs' Tort Claims (Fraud, Fraudulent Inducement and Fraud by Nondisclosure) Are Barred by the Economic Loss Doctrine and Should Be Dismissed**

Arguably recognizing that the Agreements contemplate and authorize each party to block rooms for any reason, Plaintiffs attempt to repackage their breach of contract claims into tort claims for fraud, fraudulent inducement, and fraud by nondisclosure. *See* FAC ¶¶ 34-46 & 88-104.

While a party's conduct may implicate both contractual obligations and tort duties, under Texas's economic loss rule, however, no duty in tort exists when plaintiffs have suffered only economic losses. *Hou–Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 107 (Tex. App.—Houston [14th Dist.] 2000). The Texas Supreme Court has explained that "the nature of the injury" may preclude plaintiffs from seeking relief in tort, and "[w]hen the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986); *see also Express One Int'l v. Steinbeck*, 53 S.W.3d 895, 898 (Tex. App. —Dallas 2001) (holding that under the economic loss doctrine, "[d]amages resulting solely from economic harm generally are not recoverable in simple negligence actions").

"In determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: 1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and 2) whether the injury is only the economic loss to the subject of the contract itself." *Stanley Indus. of S. Fla. v. J.C. Penney Co.*, No. 3:05-cv-2499-L, 2006 WL

2432309, at *5 (N.D. Tex. Aug. 18, 2006) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45-47 (Tex. 1998)); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494-95 (Tex. 1991).

With respect to their fraud by nondisclosure claims, Plaintiffs point to the Agarwal Statements to allege that they were damaged "because the software was not as represented, [OYO] could not achieve the promised occupancy rates or revenues for hotel owners like Plaintiff [and that] as a result, [OYO] offered rooms at up to 75% discounts in order to achieve the online engagement from prospective hotel guests it was targeting" and that such "clientele brought by the significantly-discounted room rates was highly detrimental to Plaintiffs' businesses and properties causing Plaintiffs significant damages." SAC ¶¶ 41-42 & 96-97. In other words, Plaintiffs' damages claim is the subject of the Agreements, namely expectations for driving customers to the property and generating revenue therefrom.

With respect to their fraud and fraudulent inducement claims, Plaintiffs again allege the Agarwal Statements are the basis of their claim. *See* SAC ¶¶ 46 & 103. However, Plaintiffs do not then allege any reliance on the Agarwal Statements to their detriment or any resulting damages. *See id.* However, if one were to presume the same damages theory set forth in the Fraud by Nondisclosure Claim (*i.e.,* SAC ¶¶ 41-42 & 96-97), then Plaintiffs' damages claim would (again) be the subject of the parties' Agreements, namely expectations for driving customers to the property and generating revenue therefrom.

Additionally, Plaintiffs allege that OYO's "fraudulent statements and fraudulent inducements include. . . [r]epresenting Plaintiffs' available rooms to be 'unavailable' because of the COVID-19 pandemic in the [March 27, 2020][8] letter sent to Plaintiffs … [which] allowed

[8] Plaintiffs aver that this statement was made in April 2, 2020 correspondence. SAC ¶¶ 46(b) & 103(b).

Defendant to avoid substantial obligations to Plaintiffs in the form of the guaranteed minimum revenue payments." SAC ¶¶ 46(b) & 103(b). Again, this damages claim is the subject of the Agreements (and Plaintiffs' breach of contract claim) and thus barred by the economic loss rule. The obligation to pay the Revenue Guarantee is not imposed by Texas law; rather, such obligation is set forth and created by Section 3 of the Agreements and the damages allegedly sustained by Plaintiffs, while not explicitly pled, appear to be derived solely from that lack of payment. *See id.* As such, Plaintiffs' claims for fraud and fraud by nondisclosure are merely repackaged contract claims and are thus barred by the economic loss rule. *Stanley Indus. of S. Fla.,* 2006 WL 2432309, at *5.

To be clear, consistent with the Texas Supreme Court's decision in *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998), OYO does not contend that the economic loss rule applies to Plaintiffs' claim for fraudulent inducement to the extent such claim is based on alleged pre-contract formation misconduct, reliance, and resultant injury. However, Plaintiffs' SAC does not allege any reliance or damages related to the formation of the parties' Agreements. *See generally* SAC ¶¶ 46 & 103. Where Plaintiffs' claims are based on performance of the Agreements as opposed to inducement to enter into the Agreements in the first instance, Texas law is clear that the economic loss rule bars Plaintiffs' recovery. *See Formosa Plastics Corp. USA*, 960 S.W.2d at 46; *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 417 (Tex. 2011).

## **CONCLUSION**

Wherefore, Defendant OYO Hotels respectfully requests that the Court dismiss the fraud-based claims asserted against OYO by Plaintiffs in the Second Amended Complaint on

---

However, as there is no April 2nd letter, it appears that Plaintiffs intended to refer to the March 27, 2020 letter at SAC Exhibit 3.

behalf of themselves in Counts B and C (SAC ¶¶ 34-46) and on behalf of the Putative Class in Class Counts B and C (SAC ¶¶ 88-104) pursuant to Rule 12(b)(6) with prejudice to their refiling and grant OYO such other and further relief, at law or in equity, to which it may be justly entitled.

Dated: November 3, 2021.

Respectfully submitted,


*/s/ Meagan Martin Powers*______
Meagan Martin Powers
State Bar No. 24050997
Katherine M. Anand
State Bar No. 24050223
M. Angelita Delgadillo
State Bar No. 24072507
**MARTIN POWERS & COUNSEL, PLLC**
600 E. John Carpenter Freeway, Suite 234
Irving, Texas 75062
Telephone: (214) 612-6474
Facsimile: (214) 247-1155
meagan@martinpowers.com
katie@martinpowers.com
angelita@martinpowers.com

**ATTORNEYS FOR DEFENDANT**
**OYO HOTELS, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2021, I electronically filed the foregoing document with the Clerk of the Court through the CM/ECF system, which will send notices of electronic filing to all counsel of record.

*/s/ M. Angelita Delgadillo*
M. Angelita Delgadillo