IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHREE VEER CORPORATION and<br>CHIEF HOSPITALITY, LLC, ON<br>BEHALF OF THEMSELVES AND<br>ALL OTHERS SIMILARLY SITUATED,<br><br>                    Plaintiffs,<br>v.<br><br>OYO HOTELS, INC.,<br><br>                    Defendant. | § § § § § § § § § § § § | Civil Action No. **3:20-cv-03268-L** |

## MEMORANDUM OPINION AND ORDER

Before the court is a Partial Motion to Dismiss Plaintiffs' Second Amended Complaint Pursuant to Rules 12(b)(6) ("the Motion") filed by Defendant OYO Hotels, Inc.'s ("OYO" or "Defendant") on November 24, 2021. Doc. 25. After careful consideration of the motion, brief, response, reply, pleadings, and applicable law, the court **denies** Defendant's Partial Motion to Dismiss with respect to Plaintiffs Shree Veer Corporation's ("Shree Veer") and Chief Hospitality, LLC's ("Chief Hospitality") (collectively, "Plaintiffs") fraud by nondisclosure and, jointly pled, fraud and fraudulent inducement claims brought on behalf of themselves and putative class members.

**I.     Factual and Procedural Background**

The Motion is Defendant's second attempt to dismiss Plaintiff's claims under Rule 12(b)(6). In response to Defendant's first motion to dismiss, Plaintiffs filed their First Amended Complaint ("FAC") on December 8, 2020 (Doc. 10), and Defendant soon responded with a renewed Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rules 12(b)(6) and 9(b) (Doc. 14). The court granted that Motion to Dismiss, and also granted Plaintiffs an opportunity

**Memorandum Opinion and Order - Page 1**

to cure their pleading deficiencies by filing an amended complaint.[1] *See* Doc. 20. Plaintiffs filed a Second Amended Complaint ("SAC") on October 6, 2021 (Doc. 21). Plaintiffs' SAC is identical to the FAC, apart from new facts drawn from a Wall Street Journal article ("the Article") published in January 2021, attached to the SAC. *See* Doc. 21 at 5-6, ¶¶ 14-15. Because Plaintiff's SAC is substantially the same as those that the court detailed in its earlier Memorandum Opinion and Order granting Defendant's Renewed Motion to Dismiss (Doc. 20), the court will now only recite Plaintiff's new facts or those facts relevant to the court's analysis of the Motion.

Plaintiffs' action generally arises out of a contract dispute between the parties and OYO's alleged breach, fraudulent misrepresentation, and fraudulent inducement prior to Plaintiffs entering the contract. Plaintiffs contend that OYO's CEO, Mr. Ritesh Agarwal, made fraudulent statements or misrepresentations to Plaintiffs at an OYO franchise pitch meeting in San Francisco, California in June or July 2019. Those statements ("the Argawal Statements") include but are not limited to:

a. Defendant's sophisticated revenue management and guest stay booking software platforms would increase the property owners' business;
b. Defendant's guest stay booking algorithms and revenue modeling tools were state-of-the-art and drew on data and sophisticated modeling from hotel operations around the world and were developed using the best artificial intelligence and/or machine learning talent and resources available anywhere;
c. Defendant's software was incomparable and bolstered by Defendant's employment of over two thousand software engineers around the world that continually optimize the revenue management and booking software;
d. Defendant's revenue management and booking software mechanisms were so accurate that Defendant could predict, down to the dollar, major revenue growth for each hotel that entered into an agreement with Defendant (which would

---

[1] Defendant's first Motion to Dismiss asked for dismissal on both Rule 12(b)(6) and Rule 9(b) grounds, arguing that in addition to failing to state a plausible claim for relief as required by Rule 12(b)(6), Plaintiffs failed to plead their fraud claims with specificity as required by Rule 9(b). *See* Doc. 14. In its Order granting the first motion to dismiss for failure to plead enough facts to state a plausible claim, the court determined that Plaintiffs had satisfied Rule 9(b)'s specificity requirements by alleging the necessary "who, what, when, where, and how" of their fraud claims. *See* Doc. 20 at 9-10. The court notes that Defendant's Partial Motion to Dismiss only alleges insufficiency under the 12(b)(6) standard. *See* Doc. 25. For this reason, the court limits its analysis of Plaintiffs claims to the 12(b)(6) plausibility standard.

**Memorandum Opinion and Order - Page 2**

    allow Defendant to offer the guaranteed revenue agreement more fully
    described below);
  e. The opportunity to work with Defendant (by converting their properties to
    OYO-branded hotels) was infallible because even if Defendant's revenue
    management and booking software did not operate as promised and could not
    yield the guaranteed revenue, Plaintiffs and all other prospective franchisees
    could rely on the contractual guaranteed minimum revenue as backstop
    mechanism.

Doc. 21 at 4, ¶ 13.

  Plaintiffs contend that the Agarwal Statements were false and intended "to induce small or independent property owners [including Plaintiffs] . . . to hand over control of all bookings and revenue management to OYO" by entering into contracts that included a Minimum Revenue Guarantee mechanism ("Revenue Guarantee"). *Id.* at 5-6, ¶ 15. Plaintiffs assert that Mr. Argawal knew at the time of the San Francisco meeting that OYO's failing software would render it "unable to fulfill the Minimum Revenue Guarantee mechanism" in the contracts. *Id*. at 5, ¶ 14.

  To support their assertion that Mr. Argawal knew the Revenue Guarantee would fail, Plaintiffs states facts drawn from the Article detailing OYO's financial troubles in Asian markets and subsequent cancellations of the Revenue Guarantee contracts beginning in 2019. Doc. 21 at 5-6, ¶¶15-16. The Article states that after rapid expansion in Japan, OYO realized that there were "pricing issues" with the software while "OYO was learning the ropes of revenue optimization." *Id*. (quoting the Article). Further problems arose in China because "[w]hen Oyo cancelled more of its minimum guarantees beginning in late 2019, hotel owners and suppliers filed lawsuits, staged protests at Oyo offices and aired complaints on social media. Chinese hotelier Xiong Genxiang . . . said he left Oyo in March after it failed to pay $3,800 in revenue guarantees and other fees." Doc. 21-5 at 6. Because of these issues, Plaintiffs allege that "Mr. Argawal knew, or knew to a high degree of certainty, that the [Argawal Statements] were false." Doc. 21 at 5, ¶ 14.

**Memorandum Opinion and Order - Page 3**

Plaintiffs allege that Defendant then used the COVID-19 global pandemic as "a convenient cover" for the Revenue Guarantee's failure by administratively making hotel rooms unavailable for booking, and thus suspending its Revenue Guarantee obligations. *Id*. at 7, ¶¶ 23-25. According to Plaintiffs, Defendant "quietly and fraudulently sought to force their franchisees to bear the financial losses and the associated risks that were contractually allocated to OYO in the entirely foreseeable scenario of reduced travel and tourism." *Id.* at 9, ¶ 28.

## II.     Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading

do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth."

*Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

### III.  Discussion

In Defendant's Motion, it contends that aside from the new facts drawn from the Article, Plaintiffs' SAC is identical to the prior FAC that this court dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted (Doc. 20). Doc. 25 at 5-6. Defendant asserts that because the fatal pleading flaws remain unchanged in the SAC, the court should dismiss with prejudice Plaintiffs' claims of fraud by nondisclosure, fraud, and fraudulent inducement.[2] *Id*. In addition to other arguments attacking the sufficiency of the pleadings, Defendant argues that Plaintiffs' assertion that Defendant knew or should have known that the Argawal Statements were

---

[2] OYO does not ask the court to dismiss Plaintiffs' breach of contract claim (Count A). *See* Doc. 25. As such, the court will not address this claim, and it remains a live claim in this action.

**Memorandum Opinion and Order - Page 6**

materially false because of the franchisee protests and litigation in Asian markets in late 2019 fails because those overseas difficulties occurred after the June or July 2019 meeting where Mr. Argawal made those statements. Doc. 25 at 16-17.

At issue is whether Plaintiffs' new facts plausibly allege an inference that Mr. Argawal knew the Argawal Statements were false or material at the time he made. Because knowledge of falsity or materiality at the time of the statement or nondisclosure is an element of each of Plaintiffs' fraud claims, whether Plaintiffs sufficiently pleaded that Defendant knew of its failing software and Revenue Guarantee in the summer of 2019 is dispositive as to each claim.[3]

A plaintiff can sufficiently plead the intent or knowledge element by either (1) showing the defendant's motive to commit fraud; or (2) identifying circumstances that indicate its conscious behavior. *Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev., Inc.*, 972 F.3d 684, 689 (5th Cir. 2020). Although a defendant's intent or knowledge may be pleaded generally, plaintiffs must state specific facts that support an inference of fraud. *Id.* (internal citations omitted). And "if the facts pleaded in a complaint are peculiarly within the opposing party's knowledge, fraud pleadings may be based on information and belief." *Umbrella Inv. Grp., L.L.C. v. Wolters Kluwer Fin. Servs., Inc.*, 972 F.3d 710, 713 (5th Cir. 2020) (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). Even though those specific facts may be alleged upon information and belief, "this luxury must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Id.* (internal citations omitted). Those facts must raise plaintiff's claims past the speculative level to permit the court to find an inference of fraud. *Colonial Oaks*, 972 F.3d 684, 689 (citing *Twombly*, 550 U.S. at 555-56). At the pleading stage,

---

[3] The court detailed the elements of fraud by nondisclosure, fraud, and fraudulent inducement in its Order granting Defendant's first motion to dismiss, and will not restate those elements here. *See* Doc. 20 at 8-10.

**Memorandum Opinion and Order - Page 7**

factual disputes are not proper grounds for 12(b)(6) dismissal where plaintiffs allege a link between a defendant's alleged fraudulent act and their subsequent damages. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 267 n.33 (5th Cir. 2009).

Plaintiffs' SAC is identical to their FAC, aside from the addition of two paragraphs that rely on the Article's detailing of OYO's troubles in Asian markets beginning in 2019. Doc. 21 at 4-6, ¶¶ 9, 14-15. Citing the Article, Plaintiffs claim that OYO knew that its "pricing and revenue optimization software as well as the OYO Minimum Revenue Guarantee mechanism . . . were utterly failing in recent deployments in Japan, Chinese, European markets, and even in OYO's home market in India; all these issues were ongoing as Mr. Argawal made his fraudulent statements . . . ." Doc. 21 at 5, ¶ 14.

In their Response to Defendant's assertion that the SAC fails to plead sufficient facts showing knowledge, Plaintiffs assert that the Article shows that "OYO knew its business model was failing in other markets across the globe at the same time Mr. Argawal was making the false representations at issue." Doc. 26 at 8. Plaintiffs rely on the Article's retelling of the Chinese hotelier, Mr. Genxiang, who "left Oyo in March after it failed to pay $3,800 in revenue guarantees and other fees." Doc. 26 at 8; *see also* Doc. 21-5 at 6. Plaintiffs state that this "March of 2019" departure shows that OYO and Mr. Argawal knew of the failing Revenue Guarantee before the franchise meeting in summer 2019. Doc. 26 at 8.

In its Reply, Defendant counters that, although "the article could perhaps be more clear," Plaintiffs' reading manipulates its meaning because the March reference does not contain a corresponding year. Doc. 27 at 3-4. Defendant asks the court to infer the date is March 2020 because "[i]t would strain credibility to assert that Mr. Genxiang would have cancelled his OYO

contract in March 2019 purportedly because the revenue guarantee program was cancelled, when in reality it was just being rolled out and was not cancelled until late 2019." *Id*.

The Article, however, is unclear as to whether Mr. Genxiang left OYO for cancellation of revenue guarantees in March 2019 or March 2020, but states that "OYO cancelled *more* of its minimum guarantees beginning in late 2019," creating a backlash from Chinese hotel owners and suppliers. Doc. 21-5 at 6 (emphasis added). Based on a close reading of Plaintiffs' SAC and the Article, it is not clear whether OYO was aware of its software and Revenue Guarantee issues at the time Mr. Argawal made the allegedly fraudulent statements to Plaintiffs. At the motion to dismiss stage, the court should not weigh evidence but instead look for facts that permit an inference of fraud. *Colonial Oaks*, 972 F.3d 684, 689.

Although this is a close call, taking all of their allegations to be true, Plaintiffs have pleaded sufficiently facts, at the motion-to-dismiss stage, from which one could make a reasonable inference of Defendant's knowledge of the falsity of the Argawal Statements or the materiality of its business model problems in Asian markets. *See Overholt v. Wells Fargo Bank, N.A.*, No. 4:10-CV-618, 2011 WL 4862525, *7 (E.D. Tex. Sept. 2, 2011) (finding that the parties should be able to develop facts before granting a motion to dismiss when plausibility is a close call). Plaintiffs have alleged more than a "sheer possibility" that Defendant knew of the software issues that Plaintiffs claim led to the subsequent breach of the Revenue Guarantee. *See Iqbal*, 556 U.S. at 678.

### IV.   Conclusion

For these reasons, Plaintiffs have pleaded sufficient facts to state plausible claims of fraud by nondisclosure, and fraud and fraudulent inducement. Because the claims are supported by facts that allow survival past the 12(b)(6) plausibility standard, the court **denies** Defendant's Partial Motion to Dismiss. In addition to Plaintiffs' fraud claims, their claim of breach of contract, asserted

as both an individual plaintiff and on behalf of a Putative Class, remain before the court for further adjudication.

    **It is so ordered** this 9th day of September, 2022.

                                              Sam A. Lindsay
                                              United States District Judge