IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **SHREE VEER CORPORATION and CHIEF HOSPITALITY, LLC,** | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. **3:20-cv-03268-L** |
| **OYO HOTELS, INC.,** | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: **(1)** Defendant's Objection to and Motion to Exclude Plaintiffs' Expert Witnesses ("Objections") (Doc. 67), filed July 15, 2024; **(2)** Plaintiffs' Motion to Strike Defendant's Pleadings and for Entry of Default Judgment ("Motion to Strike") (Doc. 75), filed August 26, 2024; **(3)** Jonathan Wilfong's Application for Admission *Pro Hac Vice* ("Application") (Doc. 79), filed September 12, 2024; **(4)** Defendant's Response to Plaintiffs' Motion to Strike Defendant's Pleadings and for Entry of Default (Doc. 80), filed September 13, 2024; **(5)** Defendant's Response to Show Cause Order (Doc. 81), filed September 13, 2024; and **(6)** Plaintiffs' Reply to Defendant's Response to Show Cause Order (Doc. 82), filed September 26, 2024; and **(7)** Defendant OYO Hotels, Inc's Motion for Default Judgment Against Plaintiffs Shree Veer Corporation and Chief Hospitality, LLC ("Motion for Default Judgment") (Doc. 86), filed November 15, 2024.

For the reasons herein stated, the court **overrules and denies in part** and **sustains and grants in part** Defendant's Objection to and Motion to Exclude Plaintiffs' Expert Witnesses; **denies** Plaintiffs' Motion to Strike Defendant's Pleadings and for Entry of Default Judgment; **denies** Defendant's Motion for Default Judgment; **denies** Mr. Wilfong's Application and **orders**

**Memorandum Opinion and Order – Page 1**

Mr. Wilfong to file an Application for Admission *Pro Hac Vice* by **5 p.m. on March 31, 2025**; **denies** Defendant's Motion for Default Judgment; and **sanctions** Defendant for its failure to comply with a court order.

I.    **Procedural and Factual Background**

On October 28, 2020, Defendant OYO Hotels, Inc. ("OYO" or "Defendant") removed this action filed by Shree Veer Corporation ("Shree Veer") and Chief Hospitality, LLC ("Chief Hospitality") (collectively, "Plaintiffs") to federal court pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441, and alternatively under § 1332(d)(2). Plaintiffs' action, filed on behalf of themselves and a Putative Class, arises out of a contract dispute between the parties and OYO's alleged fraudulent inducement, misrepresentations, and nondisclosure. First, Plaintiffs contend that Defendant breached its contracts with them "by, at a minimum, improperly withholding the guaranteed revenue payments required by the contracts between each Plaintiff and Defendant." Pl.'s First Am. Compl. 10, ¶ 31.

Second, they contend that OYO committed fraud by nondisclosure, causing them injury when it "partially disclosed [] information to Plaintiffs" through Defendant's CEO, Mr. Ritesh Agarwal ("Mr. Agarwal"), including, but not limited to:

> a.    Defendant's sophisticated revenue management and guest stay booking software platforms would increase the property owners' business;
> b.    Defendant's guest stay booking algorithms and revenue modeling tools were state-of-the-art and drew on data and sophisticated modeling from hotel operations around the world and were developed using the best artificial intelligence and/or machine learning talent and resources available anywhere;
> c.    Defendant's software was incomparable and bolstered by Defendant's employment of over two thousand software engineers around the world that continually optimize the revenue management and booking software;
> d.    Defendant's revenue management and booking software mechanisms were so accurate that Defendant could predict, down to the dollar, major revenue growth for each hotel that entered into an agreement with Defendant (which would allow Defendant to offer the guaranteed revenue agreement more fully described below);

>        e.    The opportunity to work with Defendant (by converting their properties to OYO-branded hotels) was infallible because even if Defendant's revenue management and booking software did not operate as promised and could not yield the guaranteed revenue, Plaintiffs and all other prospective franchisees could rely on the contractual guaranteed minimum revenue as backstop mechanism.

*Id*. 12, ¶¶ 34-38.

Third, Shree Veer and Chief Hospitality contend that OYO committed common law fraud and fraudulent inducement because it knew the statements above and a statement in a March 27, 2020 letter Plaintiffs received from Defendant "[r]epresenting Plaintiffs' available rooms to be 'unavailable' because of the COVID-19 pandemic." *Id*. at 14, ¶ 45b; *see id*. at 13-14, ¶¶ 43-45. On November 17, 2020, Defendant OYO filed its motion to dismiss Plaintiffs' original petition. In response, Plaintiffs filed their First Amended Complaint on December 8, 2020. On December 22, 2020, Defendant OYO filed its Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rules 12(b)(6) and 9(b).

In 2019, Defendant OYO began its market expansion into the United States. *Id*. at 2, ¶ 8. OYO's basic business model relied on "[s]uccessfully inducing small, independent-minded hotel property owners to re-open as an OYO-franchised hotel." *Id*. at 3, ¶ 9 (emphasis in original). As part of its expansion strategy, in June or July 2019, OYO held a meeting in San Francisco, California, for small and independent hotel property owners, including Plaintiffs' representative, where Mr. Agarwal "used this captive audience opportunity to make affirmative representations about the quality of their business model and specifically about the sophistication and superiority of Defendant's revenue management and guest stay booking software platforms." *Id*. at 4, ¶ 13. Plaintiffs contend that Mr. Agarwal's statements at this meeting—the Agarwal Statements—were fraudulent and "an attempt to induce small or independent property owners [including Plaintiffs] to hand control over all bookings and revenue management over to Defendant by entering into

contracts similar to those signed by Plaintiffs." *Id*. ¶ 14. OYO also established a Minimum Revenue Guarantee Mechanism ("Revenue Guarantee") as an incentive to guarantee a minimum revenue margin for newly franchised properties. *See id.* at 5, ¶ 15. According to Plaintiffs, by late 2019, these guaranties turned out to be more than OYO could maintain, so "it was forced to offer rooms at up to 75% discounts in order to achieve the online engagement from prospective hotel guests it was targeting," which affected the hotels' clientele and negatively impacted, consequently, Plaintiffs' businesses. *Id*. at 6-7, ¶¶ 20-21.

When the World Health Organization ("WHO") declared COVID-19 a global pandemic, Defendant OYO informed Plaintiffs in its March 27, 2020 letter that "legal orders and other developments related to the Coronavirus (COVID-19) crisis makes the guest rooms of your OYO hotel 'unavailable'" under the contracts and it would therefore suspend the Revenue Guarantee. *Id*. at 7, ¶ 23; *id.*, Ex. 3. Plaintiffs contend that their rooms were not "unavailable" or, in the alternative, the word "unavailable" in the contracts is ambiguous. *Id*. at 8, ¶¶ 24-25. Between April 2020 and September 2020, OYO withheld Revenue Guarantee payments from Chief Hospitality and Shree Veer, totaling $769,500 and $329,059, respectively. *Id*. at 8-9, ¶ 26; s*ee id.*, Ex. 1 at 6; Ex. 2 at 6. According to Plaintiffs, Defendant OYO "quietly and fraudulently sought to force their franchisees to bear the financial losses and the associated risks that were contractually allocated to OYO in the entirely foreseeable scenario of reduced travel and tourism." *Id*. at 9, ¶ 27.

Defendant contends that Plaintiffs' second claim regarding fraud by nondisclosure and third claim regarding fraud and fraudulent inducement should each be dismissed for failure to "plead facts with requisite particularity to establish their claims as required by Rule 9(b)." Def. Br. in Supp. of Mot. to Dismiss Pl. First Am. Compl. ("Def. Br. in Supp. of Mot.") 17, 23.

Moreover, Defendant OYO contends that Plaintiffs' Response does not address its arguments that they failed to plead facts to support each element of their fraud claims. Def. Reply Br. in Supp. of Mot. 2, 5.

On July 24, 2024, the court held a telephonic conference with Plaintiffs' counsel, Mr. J. Beau Powell; Defendant's counsel, Mr. Jesse Tillman ("Defendant's Attorney"); Defendant's in-house counsel, Mr. Jonathan Wilfong ("In-house Counsel"); and Defendant's corporate representative, Mr. Rakesh Prusti ("Mr. Prusti"). The court directed Defendant and Mr. Rakesh Prusti to retain new counsel, have new counsel file an appearance **by August 23, 2024**, and start seeking replacement counsel immediately. The court further ordered Mr. Jonathan Wilfong, In-House Counsel, to file a Motion for *Pro-Hac Vice* in this action. In its order, the court made it unequivocally clear that "everyone, *especially* Mr. Prusti and Defendant, needed to move expeditiously with respect to its instructions and orders." Doc. 68.

On August 30, 2024, the court ordered Defendant and Mr. Wilfong to show cause in writing by September 14, 2024, why the court should not: (1) sanction them for their failure to comply with a court order, which might include monetary sanctions; (2) strike the entries of appearance for Messrs. Friedman and Krause; (3) enter a default and default judgment of liability against OYO; and (4) set a hearing to determine damages.

## II.     Applicable Legal Standards

### A.  Standard for Default Judgment

A party is entitled to entry of a default by the clerk of the court if the opposing party fails to plead or otherwise defend as required by law. Fed. R. Civ. P. 55(a). Under Rule 55(a), a default must be entered before the court may enter a default judgment. *Id.*; *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). A "defendant is not held to admit facts that are not well-

pleaded or to admit conclusions of law." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (citation omitted). Accordingly, a defendant may not contest the "sufficiency of the evidence" on appeal but "is entitled to contest the sufficiency of the complaint and its allegations to support the judgment." *Id*. (citation omitted).

### B. Standard for Excluding Expert Testimony

Federal Rule of Civil Procedure 26(a)(2)(B) provides: "Unless otherwise stipulated or ordered by the court, . . . [the disclosure of expert testimony] must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them." If a witness is not required to provide a written expert report, Rule 26(a)(2)(C) provides that a party's disclosure must state: "the subject matter on which the witness is expected to present evidence under Federal Rule of Civil Evidence 702, 703, or 705," and include "a summary of the facts and opinions to which the witness is expected to testify." Any opinions that are not properly disclosed in accordance with the Rule 26(a) may be excluded "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Exclusion, however, is not mandatory or automatic but, instead, a matter of the court's discretion. *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990). In deciding whether to exercise its discretion and exclude an expert witness for failure to comply with Rule 26(a)(2), the court is guided by four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003) (citation omitted).

### C. Standard for Sanctions

"A district court has the inherent authority to impose sanctions . . . to control the litigation before it." *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th

Cir. 2010) (internal quotation marks omitted). District courts have "the power to levy sanctions in response to abusive litigation practices." *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993). Sanctions are appropriate if the court finds by *clear and convincing* proof that there is "bad faith or willful abuse of the judicial process." *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995). Because dismissal is a severe sanction, the court may use its discretion to issue a lesser sanction, such as attorney fees. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991).

### III.  Discussion

#### A.  Defendant's Objections (Doc. 67)

In Defendant's Objections it requests the court exclude the expert testimony of Dr. Chandrakant Shah, Shawn Desai, J. Beau Powell, David Welch, and Van Shaw. Defendant contends that Plaintiffs did not comply with the court's scheduling order or Federal Rule of Civil Procedure 26(a)(2). Doc. 67 at 1. As it relates to Dr. Shah, Defendant argues that the disclosure fails to identify the opinions to which he is expected to testify. *Id.* As it relates to the proposed testimony of Shawn Desai, J. Beau Powell, David Welch, and Van Shaw, Defendant contends that because they are attorneys for Plaintiffs in this trial, they cannot testify at trial unless they exclude themselves from representation of Plaintiffs as required by the Texas Disciplinary Rules of Professional Conduct. *Id.* at 2.

In response, Plaintiffs argue that the court should deny Defendant's request because they comply with the applicable law. Doc. 72 at 1. Plaintiffs contend that they, "designated their attorneys as experts to present their fee claim via motion following the entry of judgment; Plaintiffs do not intend to call their attorneys[] as experts on fees during trial." *Id.* at 2. Second, Plaintiffs argue that Dr. Shah was not required to provide a report because he was not "'retained or specially employed to provide expert testimony in the case or [a witness] whose duties as the [Plaintiffs']

employee regularly involve giving expert testimony.'" *Id.* (quoting Fed. R. Civ. P. 26(a)(2)(B)). Further, Plaintiffs contend that their expert disclosure identifies the matters Dr. Shah will testify to. *Id.* at 2.

In Plaintiffs' Designation of Expert Witnesses (Doc. 43), they state that Dr. Shah is expected to testify to the following:

> All facts supporting the pleadings and damages in this case. Including (without limitation) the agreements with Defendants at issue, the damages sustained to the property at issue and by Plaintiffs, and that substantial financial damage was incurred by both Plaintiffs. Further expected to testify as to Plaintiffs' financial agreements with Van Shaw.

Doc. 43 at 5.

Under Rule 26(a)(2)(B), the disclosures of an expert witness who is retained or specially employed to provide expert testimony in the case or whose duties as the party's employee regularly involve giving expert testimony must be accompanied by a written report containing:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

Because Dr. Shah was not retained, Rule 26(a)(2)(C) still requires Plaintiffs to disclose "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C) Pursuant to Texas's Property Owner Rule, "[g]enerally, a property owner is qualified to testify to the value of [his] property even if [he] is not an expert and would not be qualified to testify to the value of other property." *Reid Road Mun.*

*Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.,* 337 S.W.3d 846, 852-53 (Tex. 2011); *see also United States v. 329.73 Acres of Land,* 666 F.2d 281, 284 (5th Cir. 1982) (observing that "the opinion testimony of a landowner as to the value of his land is admissible without further qualification"); *LaCombe v. A–T–O, Inc.,* 679 F.2d 431, 433-34 (5th Cir. 1982). "[A]n officer or employee of a corporation may testify to industry practices and pricing without qualifying as an expert." *Tex. A & M Research Found. v. Magna Transp., Inc.,* 338 F.3d 394, 403 (5th Cir. 2003) (citation omitted). Because Dr. Shah is the owner of the Plaintiff entities, he can testify to damages and the value of his property. To do so, Dr. Shah does not need to testify as an expert witness and may do so based on his rationally based perception pursuant to Rule 701.

Second, because Plaintiffs designated their attorneys as expert witnesses for the purpose of presenting their fees posttrial, the court determines that Defendant's arguments are without merit. If a rule, statute, or applicable authority allows a prevailing party to seek relief postjudgment such as attorneys' fees, the procedure for doing so is set forth in Federal Rule of Civil Procedure 54(d)(2). The undersigned and other judges of the Northern District of Texas, in the vast majority of times, handle attorney's fees by way of a motion and decide the issue of attorney's fees on the written submissions. Rarely does the court hold a hearing on a motion for attorney's fees. Attorneys are familiar with the prevailing rate for attorneys in the Dallas legal market for attorneys with similar ability, competence, experience, and skill as the attorneys seeking to recover fees. The determination of attorney's fees should not devolve into an unnecessary and time-consuming process. As the Supreme Court aptly stated, "A request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Accordingly, Defendant's Objection to and Motion to Exclude Plaintiffs' Expert Witnesses are **overruled and denied in part** and **sustained and granted in part.** The Objection

is **overruled** as it relates to Plaintiffs' designation of their attorneys and **sustained** as it relates to Dr. Shah's designation as an expert.

### B. Plaintiffs' Motion to Strike and Default Judgment (Doc. 75)

In their Motion to Strike, Plaintiffs argue that the court should enter Default Judgment and strike Defendant's pleadings for failing to comply with the court's July 24, 2024 order. Doc. 75 at 2. Plaintiffs argue that because, at the time of the filing, thirty-three days had passed since the court ordered Defendant to "[r]etain new counsel and have its new counsel file an appearance on or before August 23, 2024; and [h]ave it's [*sic*] in-house counsel, who has appeared on numerous conference calls with the Court, file a Motion for *Pro-Hac Vice* in this action." Doc. 75 at 2-3. As a result, Plaintiffs request the court strike Defendant's pleading and enter default judgment against Defendant for liability only and set a hearing to prove damages.

In its response, Defendant contends that the reason for the delay in meeting the deadline was that the parties were not able to come to an engagement agreement. Doc. 80 at 2. Further, Defendant argues that the failure to meet the court's deadline was not intentional or in bad faith, but the attorneys could not appear without an agreement. *Id.* Moreover, Defendant contends that Mr. Wilfong did not file an application for *Pro-Hac Vice* because he was not aware that the court's order had the same deadline as the appearance of Counsel and because he did not have local counsel. *Id.* Finally, Defendant contends that "[a]s a result of Defendant's retention of new counsel and F&F's appearance in this case, Defendants are not proceeding *pro se,* and dismissal is not warranted in this case." *Id.* The court notes that Defendant has had several sets of lawyers who have withdrawn, and the court infers that Defendant does not, or refuses to, recognize the importance of defending a case and taking seriously the court's orders. For example, Mr. Wilfong could have filed a motion or sent some correspondence to the court explaining why no entry of

Memorandum Opinion and Order – Page 10

appearance has been made, or he could have asked for a brief extension. That, however, was not done.

While the court agrees with Plaintiffs' contentions and, it is not pleased by Defendant's lack of concern and diligence, an entry of default judgment is a drastic remedy that is "only appropriate [when] there has been a clear record of delay or contumacious conduct." *E. F. Hutton & Co. v. Moffatt*, 460 F.2d 284, 285 (5th Cir. 1972). Further, "even if the record teems with instances of delay or other egregious behavior," the court must first determine whether there is a lesser sanction that would serve the interests of justice. *S.E.C. v. First Houston Cap. Res. Fund, Inc.,* 979 F.2d 380, 382 (5th Cir. 1992). The court believes, as explained below, Defendant has caused several delays and engaged in some indifferent or defiant conduct; however, there are lesser sanctions that would serve the interests of justice and ensure compliance with future court orders. Accordingly, the court **denies** Plaintiffs' Motion to Strike.

### C. Defendant's Motion for Default Judgment (Doc. 86)

In its Motion for Default Judgment, Defendant contends that because Plaintiffs did not file a response to Defendant's Original Counterclaims within 21 days, the court should enter default judgment against Plaintiffs. Doc. 86 at 1. Defendant requests the court do the following:

> [F]ind that the allegations in its Counterclaim have been admitted and that OYO have and recover judgment from Plaintiffs, the Termination Fees in the total amount of $360,342, together with accrued, unpaid pre-judgment interest at the maximum rate allowed by law from June 25, 2020, through the day prior to the granting of Default Judgment, post-judgment interest on such sum at the maximum rate allowed by law, court costs at the legal post-judgment interest rate from the date of the granting of Default Judgment until that total sum is paid in full, and for all such other relief to which OYO is entitled.

*Id.* at 4. For the reasons that follow, the court **declines** to enter a default judgment against Plaintiffs.

In response Plaintiffs contend that entry of default against them would not be appropriate because (1) their failure to answer was due to inadvertence, (2) they have shown a clear intent to defend against the counterclaim, (3) they have defended against the counterclaim, (4) no prejudice will come to Defendant, and (5) they have a meritorious defense to the counterclaim. Doc. 89 at 1-2. Further, Plaintiffs contend that because the counterclaim was filed on October 28, 2020, on the same day Defendant removed Plaintiffs' case from state court and over the next thirteen months—in which three motions to dismiss and one motion to remand were filed—Plaintiffs' counsel inadvertently failed to file an answer. *Id.* at 3-4. In addition to the arguments Plaintiffs' made, they request that the court grant leave to file an answer to the counterclaim.

In reply, Defendant states that the proposed answer was filed after the close of discovery and after the deadline for filing dispositive motions. Doc. 92 at 2. Further, Defendant contends that because Plaintiffs added affirmative defenses, it was not able to address the affirmative defenses when it deposed Plaintiffs' representatives.* *Id.* Defendant argues that if the court grants the Motion for Default and its Motion for Summary Judgment (Doc. 85), there will be nothing left to try and, as a result, prejudice to it is apparent. *Id.* Finally, it contends that "[c]hanging the rules of the game and the operative pleadings at this late date is prejudicial to OYO, who relied upon the state of the pleadings when deposing Dr. Shah and in preparing its dispositive motions." *Id.*

As an initial matter, Defendant has failed to follow the proper procedure for seeking a default judgment. The record establishes that the clerk has not entered a default. The clerk declined "to enter a clerk's entry of default [because] an attempt to defend has been made." Doc. 91.

---

* In Plaintiffs' Answer to Defendant's Counterclaim, they assert two affirmative defenses. Doc. 90 at 4. First, Plaintiffs contend that Defendant's claims are barred because it committed a prior material breach. *Id.* Second, Plaintiffs contend that Defendant's claims are barred because it first breached the contracts at issue. *Id.* The court acknowledges Defendant's prejudice argument; however, Texas law explicitly states that a party to a contract who is in default himself cannot maintain a suit for its breach. *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990). This issue will be discussed at the hearing scheduled for **March 27, 2025.**

Memorandum Opinion and Order – Page 12

Further, as the court has already stated, an entry of default judgment is a drastic remedy that is "only appropriate [when] there has been a clear record of delay or contumacious conduct." *E. F. Hutton & Co.*, 460 F.2d at 285. Default judgments are "generally disfavored in the law" and "should not be granted on the claim, without more, that the defendant ha[s] failed to meet a procedural time requirement." *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (quoting *Mason & Hanger–Silas Mason Co. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir. 1984)). This is because the Fifth Circuit has adopted a policy in favor of resolving cases on the merits and against the use of default judgments. *See Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999); *see also Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by the courts in extreme situations [and] are available only when the adversary process has been halted because of an essentially unresponsive party.") (internal quotations and citations omitted).

Further, even if default judgment were procedurally proper, the court determines that Plaintiffs failure to answer was not willful; there is no undue prejudice to Defendant; and the record reflects that Plaintiffs' have a meritorious defense to Defendant's counterclaims. The court also determines that there has been no extended record of delay or contumacious conduct on Plaintiffs' behalf. Plaintiffs have complied with the court's orders previously and have not caused the court any delay. Accordingly, the court **denies** Defendant's Motion for Default. Further, the court **grants** Plaintiffs' Motion for Leave to Answer Defendant's Counterclaim (Doc. 89) and **issues** this portion of its order **nunc pro tunc** and deems Plaintiffs' Answer filed as of **November 18, 2024**.

### D. Show Cause Order

As previously stated, on August 30, 2024, the court ordered Defendant and Mr. Wilfong to show cause in writing by September 14, 2024, why the court should not: (1) sanction them for their failure to comply with a court order, which might include monetary sanctions; (2) strike the entries of appearance for Messrs. Friedman and Krause; (3) enter a default and default judgment of liability against OYO; and (4) set a hearing to determine damages.

In Defendant's response, its contentions are similar to those made in its Response to Plaintiffs' Motion to Strike Defendant's Pleadings and for Entry of Default Judgment. In response to the court's Show Cause Order, Defendant states that the court should not impose sanctions on them because the failure to meet the deadline was not intentional or in bad faith. Doc. 81 at 2. Defendant asserts that the delay was due to the parties not being able to come to an engagement agreement. *Id.* Further, they assert that Mr. Wilfong did not file an application for *Pro-Hac Vice* because he was not aware that the court's Order had the same deadline as the appearance of Counsel and because he did not have local counsel. *Id.* Defendant contends that courts generally admonish corporations prior to entering default judgment, which they contend did not happen in the court's previous orders. *Id.* (citing *Memon v. Allied Domecq QSR*, 385 F.3d 871, 873 (5th Cir. 2004)).

Finally, Defendant contends that it has made its best, good faith efforts to comply with the court's order, retained new counsel, filed a Motion for *Pro-Hac Vice* on behalf of its in-house counsel, and proceeded with discovery. While Defendant may have made attempts to comply timely with the court's orders, the court does not believe that it exercised diligence or demonstrated a sense of urgency in complying. Further, the record reflects the efforts that the court has had to undertake in securing Defendant's compliance with its orders.

In Plaintiffs' response, they request that the court strike the appearance of Messrs. Friedman and Krause and enter a default judgment of liability against Defendant. Pls.' Reply at 5. They contend that the Defendant "failed to 'start seeking replacement counsel immediately' and failed to 'move expeditiously with respect to [the Court's] instructions and orders[,]' as expressly instructed by the Court." *Id.* at 1. Plaintiffs contend that Defendant offers no explanation for its delay in seeking counsel immediately and that it "seemingly did not impress the need to act expeditiously upon its newly retained counsel." *Id.* at 2. Further, the engagement letter was provided to Defendant on August 22, 2024, a day before the deadline, "without any explanation as to why Defendant nor its new counsel heeded the Court's instruction to act expeditiously." *Id.* Plaintiffs also argue that Mr. Wilfong's Declaration explanation for failure to timely seek admission *pro hac vice* is "belied by Mr. Wilfong's Application for Admission *Pro Hac Vice*, filed on September 12, 2024[,] . . . in which Mr. Wilfong represents that he is a member of the United States District Court for the Southern District of Texas." *Id.* at 3.

Plaintiffs *correctly* counter and refute Defendant's reliance on *Memon*. In their reply, they state:

> Defendant relies on *Memon* for the assertion that it should be admonished for its failure to retain counsel prior to the Court striking its pleading. ECF Doc. 81 at 3. However, the Fifth Circuit's opinion in *Memon* does not support Defendant's position here. In *Memon*, the Fifth Circuit stated that trial courts "*might*, inter alia, admonish the corporation that it cannot proceed without counsel, order the corporation to retain counsel within a certain period of time (the appropriate amount of time also being within the judge's discretion), or dismiss the case without prejudice and allow the corporation to re-file." *Memon*, 385 F.3d at fn 5 (emphasis added).

*Id*. at 4. Plaintiffs contend default judgment is the appropriate remedy because district courts throughout Texas have entered default judgment when a corporation failed to appoint counsel after warning. *Id.* (citing *PalWeb Corp. v. Vimonta*, 2003 U.S. Dist. Lexis 14484 (N.D. Tex. 2003);

*Mount Vernon Fire Ins. Co. v. Obodoechina*, 2009 U.S. Dist. Lexis 12875 (S.D. Tex 2009); and *Adonai*, 2012 U.S. Dist. Lexis 35704, *7-8 (N.D. Tex. 2012) (Lindsay, J.)). Finally, they contend that because Defendant failed to comply, the court should enter default judgment against Defendant and strike the appearance of Messrs. Friedman and Krause.

First, the court notes that this trial has been inundated with delays, which were largely the fault of Defendant, including changing its representation four times. The court has repeatedly stressed the importance of being timely and adhering to the schedule it has set. During the telephonic conference—which was held to address Defendant's delays—the court instructed Defendant to start seeking replacement counsel immediately. It further told Defendant that it could not "wait until five or ten days before [they] start[ed] seeking counsel." Mr. Prusti indicated that he understood the court's instruction, but Defendant's response to the court's Show Cause Order does not indicate that he did. Defendant states that "[o]n or about August 4, 2024, . . . Defendant began discussions with Friedman & Feiger, L.L.P.," which was 11 days after the court instructed Defendant to seek replacement counsel. Doc. 81 at 1. Defendant provides no reason why it waited 11 days to begin its discussions with Friedman & Feiger. Defendant further adds that it had several discussions over the next few days but did not make an arrangement until August 14, 2024, which would have left it nine days to comply with the court's order. Instead, it did not complete the engagement until August 28, 2024, and did not file its Notice of Appearance until August 29, 2024.

It is not incumbent upon the court to inform attorneys that they should follow the law. It is basic and well-established law that a corporation cannot represent itself. In its order on July 24, 2024, the court made it unequivocally clear that Defendant was to retain counsel and Mr. Wilfong was to file a motion to appear *Pro-Hac Vice* (Doc. 68). Also, it is also not incumbent on the court to clarify deadlines that it has made explicitly clear. Instead of filing for an extension or notifying

the court of the delay, Messrs. Lawrence Friedman and James Krause filed Notices of Appearance, and Mr. Jonathon Wilfong filed an Application for Admission *Pro-Hac Vice*, all of which were untimely. Mr. Wilfong's Application was filed on September 12, 2024, **20 days** after he was ordered to do so, and in addition to his untimely filing, the application was *incomplete*. Mr. Wilfong does not have to be a litigator to fill in the blanks of the application. After all, he is an attorney. Further, as Plaintiff has stated, Mr. Wilfong has already been admitted into the Southern District of Texas, which likewise required him to fill in the blanks on an application.

Accordingly, the court **denies** Mr. Wilfong's Application because it is incomplete. Further, the court **orders** Defendant OYO Hotels, Inc. to pay Plaintiffs Shree Veer Corporation and Chief Hospitality, LLC, their reasonable attorney's fees and costs incurred in drafting and filing their Motion to Strike (Doc. 75), and their reply to Defendant's Response to Show Cause Order (Doc. 82), as the filing of these documents would not have been necessary had Defendant simply complied with the court's orders, or made reasonable efforts to do so. By ordering Defendant to pay attorney's fees, the court is imposing a lesser sanction than striking Defendant's pleadings and entering a default judgment against it. Defendant **shall** make the payment to Plaintiffs by **5:00 p.m. on March 24, 2025.**

### E.  Discovery

In reviewing the record, some limited discovery may be required. To resolve this issue, the court will conduct a telephonic hearing and listen to argument at **11:00 a.m. on March 27, 2025.** By a separate order, or other communication, the parties will be informed of the details of the telephone conference.

IV.     Conclusion

Accordingly, the court **overrules and denies in part,** and **sustains and grants in part** Defendant's Objection to and Motion to Exclude Plaintiffs' Expert Witnesses (Doc. 67); **denies** Plaintiffs' Motion to Strike Defendant's Pleadings and for Entry of Default Judgment (Doc. 75); **grants** Plaintiffs' Motion for Leave to Answer Defendant's Counterclaim (Doc. 89) and **issues** this portion of its order **nunc pro tunc** and deems Plaintiffs' Answer filed as of **November 18, 2024**; **denies** Defendant's Motion for Default Judgment; **denies** Mr. Wilfong's Application (Doc. 79) and **orders** him to file an Amended Application for Admission *Pro Hac Vice* by **5 p.m. on March 24, 2025**; and **sanctions** Defendant for its failure to comply with a court order, by **issuing** this stern warning and **reminds** Messrs. Wilfong, Friedman, and Krause that it will *definitely* impose stiffer sanctions against them and their client if they fail to comply with any future court orders.

**It is so ordered** this 17th day of March, 2025.

                                                 Sam A. Lindsay
                                                 United States District Judge