IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SHREE VEER CORPORATION and<br>CHIEF HOSPITALITY, LLC,<br><br>       Plaintiffs,<br><br>       v.<br><br>OYO HOTELS, INC.,<br><br>       Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br><br>Civil Action No. **3:20-cv-03268-L** |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant's Motion for Summary Judgment ("Motion") (Doc. 84), filed November 15, 2024; Plaintiffs' Response to Defendant's Motion for Summary Judgment and Brief in Support (Doc. 93), filed December 6, 2024; and Defendant's Reply to Plaintiffs' Response (Doc. 96), filed December 6, 2024. After careful consideration of the Motion, response, reply, objections, appendices, evidence, record, and applicable law, the court **denies** Defendant's Motion for Summary Judgment.

  **I.**  **Procedural and Factual Background**

On October 28, 2020, Defendant OYO Hotels, Inc. ("OYO" or "Defendant") removed this action filed by Shree Veer Corporation ("Shree Veer") and Chief Hospitality, LLC ("Chief Hospitality") (collectively, "Plaintiffs") to federal court pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441, and alternatively under § 1332(d)(2). Plaintiffs' action, filed on behalf of themselves and a Putative Class, arises out of a contract dispute between the parties and OYO's alleged fraudulent inducement, misrepresentations, and nondisclosure. First, Plaintiffs contend that Defendant breached its contracts with them "by, at a minimum, improperly withholding the guaranteed

revenue payments required by the contracts between each Plaintiff and Defendant." Pl.'s First Am. Compl. 10, ¶ 31.

Second, they contend that OYO committed fraud by nondisclosure, causing them injury when it "partially disclosed [] information to Plaintiffs" through Defendant's CEO, Mr. Ritesh Agarwal ("Mr. Agarwal"), including, but not limited to:

> a. Defendant's sophisticated revenue management and guest stay booking software platforms would increase the property owners' business;
> b. Defendant's guest stay booking algorithms and revenue modeling tools were state-of-the-art and drew on data and sophisticated modeling from hotel operations around the world and were developed using the best artificial intelligence and/or machine learning talent and resources available anywhere;
> c. Defendant's software was incomparable and bolstered by Defendant's employment of over two thousand software engineers around the world that continually optimize the revenue management and booking software;
> d. Defendant's revenue management and booking software mechanisms were so accurate that Defendant could predict, down to the dollar, major revenue growth for each hotel that entered into an agreement with Defendant (which would allow Defendant to offer the guaranteed revenue agreement more fully described below);
> e. The opportunity to work with Defendant (by converting their properties to OYO-branded hotels) was infallible because even if Defendant's revenue management and booking software did not operate as promised and could not yield the guaranteed revenue, Plaintiffs and all other prospective franchisees could rely on the contractual guaranteed minimum revenue as backstop mechanism.

*Id*. 12, ¶¶ 34-38.

Third, Shree Veer and Chief Hospitality contend that OYO committed common law fraud and fraudulent inducement because it knew the statements above and a statement in a March 27, 2020 letter Plaintiffs received from Defendant "[r]epresenting Plaintiffs' available rooms to be 'unavailable' because of the COVID-19 pandemic." *Id*. at 14, ¶ 45b; *see id*. at 13-14, ¶¶ 43-45. On November 17, 2020, Defendant OYO filed its motion to dismiss Plaintiffs' original petition. In response, Plaintiffs filed their First Amended Complaint on December 8, 2020. On December

22, 2020, Defendant OYO filed its Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rules 12(b)(6) and 9(b).

In 2019, Defendant OYO began its market expansion into the United States. *Id*. at 2, ¶ 8. OYO's basic business model relied on "[s]uccessfully inducing small, independent-minded hotel property owners to re-open as an OYO-franchised hotel." *Id*. at 3, ¶ 9 (emphasis in original). As part of its expansion strategy, in June or July 2019, OYO held a meeting in San Francisco, California, for small and independent hotel property owners, including Plaintiffs' representative, where Mr. Agarwal "used this captive audience opportunity to make affirmative representations about the quality of their business model and specifically about the sophistication and superiority of Defendant's revenue management and guest stay booking software platforms." *Id*. at 4, ¶ 13. Plaintiffs contend that Mr. Agarwal's statements at this meeting—the Agarwal Statements—were fraudulent and "an attempt to induce small or independent property owners [including Plaintiffs] to hand control over all bookings and revenue management over to Defendant by entering into contracts similar to those signed by Plaintiffs." *Id*. ¶ 14. OYO also established a Minimum Revenue Guarantee Mechanism as an incentive to guarantee a minimum revenue margin for newly franchised properties. *See id.* at 5, ¶ 15. According to Plaintiffs, by late 2019, these guaranties turned out to be more than OYO could maintain, so "it was forced to offer rooms at up to 75% discounts . . . to achieve the online engagement from prospective hotel guests it was targeting," which affected the hotels' clientele and negatively impacted, consequently, Plaintiffs' businesses. *Id*. at 6-7, ¶¶ 20-21.

When the World Health Organization ("WHO") declared COVID-19 a global pandemic, Defendant OYO informed Plaintiffs in its March 27, 2020 letter that "legal orders and other developments related to the Coronavirus (COVID-19) crisis make[] the guest rooms of your OYO

hotel 'unavailable'" under the contracts and it would therefore suspend the Revenue Guarantee. *Id*. at 7, ¶ 23; *id*., Ex. 3. Plaintiffs contend that their rooms were not "unavailable" or, in the alternative, the word "unavailable" in the contracts is ambiguous. *Id*. at 8, ¶¶ 24-25. Between April 2020 and September 2020, OYO withheld Revenue Guarantee payments from Chief Hospitality and Shree Veer, totaling $769,500 and $329,059, respectively. *Id*. at 8-9, ¶ 26; s*ee id.*, Ex. 1 at 6; Ex. 2 at 6. According to Plaintiffs, Defendant OYO "quietly and fraudulently sought to force their franchisees to bear the financial losses and the associated risks that were contractually allocated to OYO in the entirely foreseeable scenario of reduced travel and tourism." *Id*. at 9, ¶ 27.

On July 24, 2024, the court held a telephonic conference with Plaintiffs' counsel, Mr. J. Beau Powell; Defendant's counsel, Mr. Jesse Tillman ("Defendant's Attorney"); Defendant's in-house counsel, Mr. Jonathan Wilfong ("In-house Counsel"); and Defendant's corporate representative, Mr. Rakesh Prusti ("Mr. Prusti"). The court directed Defendant and Mr. Rakesh Prusti to retain new counsel, have new counsel file an appearance by August 23, 2024, and start seeking replacement counsel immediately. The court further ordered Mr. Jonathan Wilfong, In-House Counsel, to file a Motion for *Pro-Hac Vice* in this action. In its order, the court made it unequivocally clear that "everyone, *especially* Mr. Prusti and Defendant, needed to move expeditiously with respect to its instructions and orders." Doc. 68.

On August 30, 2024, the court ordered Defendant and Mr. Wilfong to show cause in writing by September 14, 2024, why the court should not: (1) sanction them for their failure to comply with a court order, which might include monetary sanctions; (2) strike the entries of appearance for Messrs. Friedman and Krause; (3) enter a default and default judgment of liability against OYO; and (4) set a hearing to determine damages.

Finally, on March 17, 2025, the court overruled and denied in part, and sustained and granted in part Defendant's Objection to and Motion to Exclude Plaintiffs' Expert Witnesses (Doc. 67); denied Plaintiffs' Motion to Strike Defendant's Pleadings and for Entry of Default Judgment (Doc. 75); granted Plaintiffs' Motion for Leave to Answer Defendant's Counterclaim (Doc. 89); denied Defendant's Motion for Default Judgment; denied Mr. Wilfong's Application (Doc. 79) and ordered him to file an Amended Application for Admission Pro Hac Vice; and sanctioned Defendant for its failure to comply with a court order.

## II.     Summary Judgment Motion Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita*

*Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). Mere conclusory allegations are not competent summary judgment evidence and, thus, are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III. Discussion

#### A. Breach of Contract Claim

Under Texas law, the essential elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the [moving party]; (3) breach of the contract by the [non-moving party]; and (4) damages sustained by the [moving party] as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (internal quotation marks omitted).

Defendant contends, in a conclusory manner, that it is entitled to judgment as a matter of law on Plaintiffs' breach of contract claim because there is no evidence that they "performed, tendered performance of, or were excused from performing their contractual obligations." Doc. 85 at 5. Further, Defendant contends that there is no evidence that it breached any contract with Plaintiffs and no evidence that any alleged breach caused either Plaintiff injury. *Id.*

In response, Plaintiffs argue that because there is a genuine dispute of material fact with respect to each challenged element of their breach of contract claim, the Motion should be denied. Doc. 93 at 9. Plaintiffs contend that they performed their obligations under their respective contracts. *Id.* Further, they argue that their "performance is further evidenced by the fact that OYO was paying the Minimum Revenue Guarantee to each Plaintiff prior to the issuance of the COVID letter," which at minimum shows that there is a genuine dispute of material fact. *Id.* (citations omitted). Plaintiffs contend OYO breached the contract when it "falsely contended that, due to the COVID outbreak, Plaintiffs' rooms were 'unavailable' and thus OYO would not be making the Minimum Revenue Guarantee payments." *Id.* at 10. Plaintiffs contend that this statement was untrue because they continued to rent rooms to customers during the COVID-19 outbreak. *Id.* Finally, they contend that because the rooms were not blocked or unavailable, the Minimum

Revenue Guarantee payments were due to them, and OYO breached by not paying the payments to Plaintiffs as required. *Id.* at 11. The court agrees to the extent that Plaintiffs have raised a genuine dispute of material fact on this element.

It is undisputed that Defendant entered into contracts with Shree Veer and Chief Hospitality. Therefore, the first element is satisfied. As to the remaining elements, the declaration of Dr. Chandrakant Shah and the deposition testimony of OYO Hotels, Inc., through its corporate representative Sonal Sinha, raise a genuine dispute of material fact as to whether: (1) Plaintiffs performed their obligations under the contracts, (2) Defendant breached the contract, and (3) Plaintiffs sustained an injury as a result of the breach. Dr. Shah stated that he, acting on behalf of Shree Veer and Chief Hospitality, agreed to the Marketing Consulting and Revenue Management Agreement with OYO. Pls.' App. 5 ¶ 14. He further stated that Shree Veer and Chief Hospitality performed the renovations to the interior and exterior of the hotels as set forth in their respective contracts. *Id.* ¶ 17. In the deposition testimony of OYO Hotels, Inc., its representative Sonal Sinha, testified that it made the minimum guarantee payments, which were likely made because Plaintiffs had completed the property improvements. Pls.' App. 63:9-23. These statements by both parties establish that Defendant is not entitled to summary judgment on Plaintiffs' breach of contract claim.

As it relates to the breach, Dr. Shah stated that OYO stopped making the minimum guarantee payments after March 26, 2020. Pls.' App. 6 ¶ 22. Defendant only provides conclusory statements regarding this element. It merely states that Plaintiffs provide no evidence that there was a breach and does not contest or refute Plaintiffs' competent summary judgment evidence. Dr. Shah further stated that after OYO stopped making the minimum guarantee payments, Shree Veer

and Chief Hospitality could not meet their loan obligations, they defaulted on their loans, and lost both of their properties to foreclosure. *Id.* ¶ 23.

After considering the parties' arguments and evidence, the court determines that a genuine dispute of material fact exists, and Defendants are not entitled to judgment as a matter of law as to Plaintiffs' breach of contract claim. Accordingly, the court **denies** Defendants' Motion as to this claim.

### B. Fraud Claims

Defendant contends that it is entitled to judgment as a matter of law on Plaintiffs' claims for fraud by nondisclosure, fraud, and fraudulent inducement. Doc. 85 at 6. First, Defendant argues that Plaintiffs fail to meet any of the elements for fraud by nondisclosure. *Id.* Second, Defendant argues that there is no evidence that Defendant made a material, false representation to Plaintiffs. *Id.* at 7. Moreover, it contends that because Plaintiffs fail to raise a genuine dispute of material fact on their claims for fraud and fraudulent inducement, they "should be dismissed." *Id.*

#### 1. Fraud by Nondisclosure

"Fraud by non-disclosure is simply a subcategory of fraud because, whe[n] a party has a duty to disclose, the non-disclosure may be as misleading as a positive misrepresentation of facts." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). To support a claim or raise a genuine dispute of material fact under the for fraud by nondisclosure, Plaintiff must establish each of the following:

> (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the nondisclosure, which resulted in injury.

*CBE Group, Inc. v. Lexington Law Firm*, 993 F.3d 346, 353 (5th Cir. 2021) (citing *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219-20 (Tex. 2019)). "As a

general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information. Thus, silence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent." *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001) (citation omitted). "[T]he existence of a duty to disclose is a question of law that must be decided by the court, not by the jury." *Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 562 (Tex. 2019), *reh'g denied* (Oct. 18, 2019).

> A duty to disclose arises in four circumstances:
>
>> (1) there was a fiduciary or other special relationship requiring disclosure, (2) the defendant discovered new information that made an earlier representation misleading or untrue, (3) the defendant created a false impression by making a partial disclosure, or (4) the defendant voluntarily disclosed some information and therefore had a duty to disclose the whole truth.

*Guevara v. Lackner*, 447 S.W.3d 566, 578 (Tex. App.—Corpus Christi–Edinburg 2014, no pet.).

> Defendant contends as follows:
>
> [T]here is no evidence: (1) that Defendant failed to disclose certain facts to the Plaintiffs; (2) that Defendant had a duty to disclose the facts to the Plaintiffs; (3) that the facts were material; (4) that Defendant knew: a) The Plaintiffs were ignorant of the facts; and b) The Plaintiffs did not have an equal opportunity to discover the facts; (5) that Defendant was deliberately silent when it had a duty to speak; (6) that by failing to disclose the facts, the Defendant intended to induce the Plaintiffs to take some action or refrain from acting; (7) The Plaintiffs relied on the Defendant's nondisclosure; and (8) The Plaintiffs were injured as a result of acting without the knowledge of undisclosed facts.

Doc. 85.

Plaintiffs contend that they can prove each element of their claim for fraud by nondisclosure. Doc. 93 at 13. Plaintiffs provide evidence that "[d]uring the meeting in June [or] July of 2019, attended by Dr. Shah on behalf of both Plaintiffs, OYO's CEO, Mr. Agarwal, made numerous representations regarding the superiority of OYO's technology and the benefits of partnering with OYO." *Id.* (citing Exhibit 1, ¶ 9). They argue that OYO was offering the Minimum

Revenue Guarantee payments because of its confidence in its technology. *Id.* Plaintiffs provide evidence that OYO failed to disclose to the owners at the meeting that at the time of the meeting, it had already been having issues and lawsuits with contracts that contained the Minimum Guarantee Revenue payments in Asia. *Id.* (citing Exhibit 2 at 20:8-23:6, Pls.' App. 53-56; Exhibit 2 at 28:18-31:5, Pls.' App. 59-62; and Doc. 21-5).

Second, Plaintiffs argue that Mr. Agarwal's confidence in the business model and its prior success, despite the issues it was facing in Asia, "created a false impression that the business model was tremendously successful and infallible." *Id.* at 14. Further, Plaintiffs contend that Defendant had a duty to disclose the full truth regarding the business model, as Plaintiffs could not know of the issues it had with the business model. *Id.* Third, Plaintiffs contend that the undisclosed facts were material because they were important to Plaintiffs in making the decision to sign the contracts, which they would not have signed if they knew of the issues in Asia. *Id.* at 15. Fourth, Plaintiffs argue that they were ignorant of the facts and that they did not have an equal opportunity to discover the facts. *Id.*

Fifth, Plaintiffs contend that OYO was deliberately silent when it had a duty to speak. *Id.* They argue that the factors set forth by Texas law are present in this case, as they demonstrate OYO was deliberately silent. *Id.* (citing *Chase Comm. Corp. v. Datapoint Corp.*, 774 S.W.2d 359, 367 (Tex. App.—Dallas 1989, no writ)). Plaintiffs allege and provide evidence that the undisclosed facts were concealed at the meeting designed to get hotel owners to partner with Defendant, and it had an interest in not disclosing that the business model was failing in Asia. *Id.* at 16. Sixth, Plaintiffs argue and provide evidence that the entire purpose of the 2019 meeting was to induce hotel owners to partner with OYO and operate their hotels under the OYO brand. *Id.* (citing Exhibit 1 ¶ 8, Pls.' App. 4; Exhibit 1-A, Pls.' App. 8-27). Plaintiffs contend that as a result of Defendant's

failure to disclose the failures of the business model, its intent was to induce Plaintiffs to sign the Shree Veer and Chief Contract. *Id.*

Seventh, Plaintiffs contend that Dr. Shah relied on the nondisclosure and "would not have caused either Shree Veer or Chief to enter into those agreements had he known of the failing business model." *Id.* (citations omitted). Finally, Plaintiffs argue that they were injured as a result of taking actions without the knowledge of the alleged undisclosed facts. *Id.* They contend that shortly after Plaintiffs began receiving the monthly Minimum Guarantee Revenue payments, OYO abandoned the business model, and had Plaintiffs known of the failures of the business model, they would not have entered into their respective contracts. *Id.* at 17. Plaintiffs argue that they have suffered serious financial injury because they entered into their respective contracts. *Id.*

Viewing all the above-cited evidence in the light most favorable to Plaintiffs, they have presented evidence sufficient to raise a genuine dispute of material fact as to each element of their fraud by nondisclosure claim. Accordingly, the court **denies** Defendants' Motion as to this claim.

### 2. Fraud and Fraudulent Inducement

Texas law recognizes "two types of common-law fraud: (1) simple fraud, also known as fraudulent misrepresentation, and (2) fraudulent inducement." *Megatel Homes, LLC v. Moayedi*, No. 3:20-CV-00688-L, 2022 WL 2306949, at *11 (N.D. Tex. June 27, 2022) (citation omitted).

In Texas, the elements of common-law fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd.*

*v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (citation omitted). "Fraudulent inducement is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 304 (5th Cir. 2021) (citation omitted); *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001).

Fraud and fraudulent inducement claims are subject to Fed. R. Civ. P. 9(b)'s heightened pleading requirement, which requires plaintiffs who allege fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To comply with Rule 9(b), the plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 177 (5th Cir. 1997).

Plaintiffs argue that OYO made a representation to Plaintiffs during the meeting in June or July 2019, in which Mr. Agarwal told them that they would receive several benefits if they partnered with OYO. Doc. 93 at 17. Plaintiffs contend that Mr. Agarwal was so confident in the technology that OYO was proving that it offered Minimum Revenue Guarantee payments to hotel owners who entered into an agreement with it. *Id.* (citations omitted). Second, Plaintiffs argue that the representations made during the June or July 2019 meeting were material to Dr. Shah and his decision to enter into an agreement with OYO. *Id.* at 18. They contend that specifically, "the representations regarding the sophisticated software and business model were important" to Dr. Shah in making his determination of whether to move forward with a relationship with OYO. *Id.* (citations omitted).

Third, Plaintiffs contend that the "representations regarding the sophistication of the software and tremendous success of the business model in Asia was false." *Id.* (citations omitted). Fourth, Plaintiffs argue that when OYO made the alleged false representation, OYO knew it was

false and, at a minimum, it was made recklessly as a positive assertion. *Id.* at 19. Fifth, Plaintiffs contend that OYO made the representation with the intent that they act on it. *Id.* (citations omitted). Sixth, Plaintiffs again allege that they relied on the statements made by OYO and Mr. Agarwal. *Id.* (citations omitted). Finally, Plaintiffs contend that the representation caused them injury. *Id.* at 19-20.

Defendant argues that there is no evidence that it made a material, false representation to Plaintiffs. Doc. 85 at 7. Further, Defendant contends that there is no evidence that when it "made any alleged representation, that [it] knew the representation was false or made representation recklessly, as a positive assertion, and without knowledge of its truth." *Id.* Moreover, Defendant contends that there is no evidence Plaintiff relied on the alleged representation or that it caused Plaintiffs any injury. *Id.* As a result, Defendant contends that the court should "dismiss" the claims for fraud and fraudulent inducement.

Further, Defendant contends that Plaintiffs do not provide evidence of the contracts in Asia, "what the basis of the lawsuits in Asia were, what contractual conditions were not fulfilled, any outcomes of those lawsuits, what the laws governing the Asian contracts are, that Defendant's business model was failing, or any other evidence that would support the elements of their claims." Doc. 96 at 5. Further, Defendant argues that the contractual issues in Asia with the Revenue Guarantee payments were different because their issues "concerned the owners' lack of focus on customer service and their failure to transform their hotels prior to receiving payments." *Id.* Defendant alleges that the issues and the laws in Asia are different than the laws in the United States and Plaintiffs have failed to establish how its nondisclosure "amounts to fraud by nondisclosure." *Id.* at 6

Viewing all the above-cited evidence in the light most favorable to Plaintiffs, the court determines that they have presented evidence sufficient to raise a genuine dispute of material fact as to each element of their fraud and fraudulent inducement claims. Accordingly, the court **denies** Defendants' Motion as to these claims. The court's determination as to Defendant's Motion is not a comment on the strength or weakness of the parties' claims, defenses, or evidence.

### C. Objections

Defendant makes the following objections: (1) Dr. Shah's statements in paragraph 10 contain hearsay and are speculative, lack foundation, and relevance; (2) Dr. Shah's statements in paragraph 12 contain hearsay; (3) Dr. Shah's statements in paragraph 21 are conclusory; and (4) Dr. Shah's statements in paragraph 23 are conclusory. Doc. 96 at 1-2.

Pursuant to Rule 56(c)(4), a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the [] declarant is competent to testify on the matters stated." If the declaration includes any statement(s) that violate Rule 56(c)(4), the court does not consider them for summary judgment purposes. *See Garza-Flores v. Mayorkas,* 38 F.4th 440, 445 (5th Cir. 2022).

### 1. Defendant's Objections to Paragraph 10.

Defendant argues that paragraph 10 contains hearsay. In his declaration, Dr. Shah states the following: "Mr. Agarwal stated that OYO was so confident in [its] technology that OYO was offering 'Minimum Revenue Guarantee' payments to hotel owners who moved forward with OYO," and "Mr. Agarwal told me that OYO had superior technology, had performed a lot of research and analysis of hotel markets in America, and had previously had success with this business model in various Asian countries." Pls.' App. 4 ¶ 10. Further, Defendants contend that Dr. Shah's statements are speculative, lack foundation, and are not relevant.

First, this statement is admissible as a statement by a party opponent because Mr. Agarwal was acting as OYO's representative. Pursuant to Federal Rule of Evidence 801(d)(2)(D), a statement made by "the party's agent or employee on a matter within the scope of that relationship and while it existed" is not hearsay. Fed. R. Evid. 801(d)(2)(D). Alternatively, this statement is not hearsay because it is not offered for the truth of the matter asserted. The statement is being used to show the effect on Dr. Shah, who heard the message. *See United States v. Reed,* 908 F.3d 102, 120 (5th Cir. 2018) ("Ordinarily, a statement is not hearsay if it is offered to show the statement's effect on the listener."). To survive the summary judgment phase and meet the elements of several of their claims, Plaintiffs have to establish that there was a misrepresentation made by Defendant on which they relied.

Further, as the sole owner of Shree Veer Corporation and Chief Hospitality, LLC, Dr. Shah is testifying to his personal knowledge. Dr. Shah is stating what he understood to be the truth regarding the lawsuits in Asia. As he prefaced in his statement, this was based on his understanding. Accordingly, the court **overrules** Defendant's objections to paragraph 10 of Dr. Shah's declaration. Now, of course, the court disregards the "so confident" language used, and it had no bearing on the court's determination.

### 2. Defendant's Objections to Paragraph 12.

Defendant argues that paragraph 12 contains hearsay. In his declaration, Dr. Shah states the following: "Mr. Agarwal [] stated that their sophisticated software and business model allowed for OYO to commit to the Minimum Revenue Guarantee and that hotel owners like myself 'did not need to worry about anything' after signing up with OYO." Pls.' App. 5 ¶ 12.

For the reasons stated in the first objection, the court **overrules** Defendant's objection to paragraph 12 of Dr. Shah's declaration.

**3. Defendant's Objections to Paragraph 21.**

Defendant contends that paragraph 21 of Dr. Shah's declaration is conclusory. In his declaration, Dr. Shah states the following:

> Neither Shree Veer nor Chief ever had any rooms that were unavailable as a result of the COVID-19 outbreak and both Shree Veer and Chief continued to rent rooms to customers during the months of April, May and June of 2020. Rooms rented by Shree Veer and Chief during this time period included not only walk-in rentals, but also rentals to customers who booked through OYO's software and website.

Pls.' App. 6 ¶ 21. As the sole owner of Shree Veer Corporation and Chief Hospitality, LLC, Dr. Shah is testifying to his personal knowledge. Moreover, this goes more to the weight of the statement than its admissibility. Accordingly, the court **overrules** Defendant's objection to paragraph 21 of Dr. Shah's declaration.

**4. Defendant's Objections to Paragraph 23.**

Defendant contends that paragraph 23 of Dr. Shah's declaration is conclusory. In his declaration, Dr. Shah states the following:

> After OYO suspended the Minimum Revenue Guarantee payments, both Shree Veer and Chief could not meet their loan obligations. As a result of OYO's suspension of the Minimum Revenue Guarantee payments, both Shree Veer and Chief fell delinquent on each of their respective loans. Eventually, both hotels defaulted on their loans and the lenders foreclosed on each of the loans. Shree Veer and Chief both lost their properties to foreclosure and both the Alva hotel and the McCook hotel were sold at sheriff's sales.

Pls.' App. 6 ¶ 23.

Likewise, as the sole owner of Shree Veer Corporation and Chief Hospitality, LLC, Dr. Shah is testifying to his personal knowledge. Defendant's objection fails to establish at this stage that Dr. Shah does not have personal knowledge of this information. If this case goes to trial, and Defendant shows that this testimony violates Federal Rule of Evidence 602, or that the proper

foundation is not laid, the court will not admit the statement. Accordingly, the court **overrules** Defendant's objection to paragraph 23 of Dr. Shah's declaration.

### IV.  Conclusion

For the reasons stated, the court **determines** that, notwithstanding Defendant's objections to Plaintiffs' summary judgment briefs and evidence, a genuine dispute of material fact exists regarding the elements of each claim at issue that are the subject of Defendant's Motion. Accordingly, the court **overrules** Defendant's Objection to the Declaration of Dr. Chandrakant Shah (Doc. 96), and **denies** Defendant's Motion for Summary Judgment (Doc. 84) in its entirety.

Now that the court has ruled, the parties are in a better position to assess the strengths and weaknesses of their respective claims and defenses. Neither side is "out of the woods," as no one can predict what a reasonable jury will do. Further, given the age of this case, the attorneys—because of prolonged litigation—are the only persons benefiting handsomely. Given the current posture of the case, the court believes that the parties should seriously consider resolving this action without further court involvement; however, to minimize costs and expenses, the court is willing to refer this action to a magistrate judge solely for settlement purposes. If the parties desire the court to refer this action to United States Magistrate Judge Renee Toliver or another magistrate judge to conduct a settlement or mediation conference, they must so inform the court **by 5:00 p.m., July 22, 2025.** Moreover, this case will be five years old before it is tried. **It is high time to settle the matter amicably or resolve it by way of a trial!**

**It is so ordered** this 15th day of July, 2025.

Sam A. Lindsay
United States District Judge